## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| TWD, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 18 C 7695 |
| | ) | |
| GRUNT STYLE LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendant Grunt Style LLC's ("Grunt Style") Motion for Partial Summary Judgment. For the following reasons, the Court grants the Motion.

## BACKGROUND

In resolving a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The following facts are taken from the record and are undisputed unless otherwise noted.

This action raises an issue over the ownership of the "THIS WE'LL DEFEND" trademark (the "Mark"). Plaintiff TWD, LLC ("TWD") owns U.S. Trademark Number 4880766, while Defendant Grunt Style asserts it has common law rights to the Mark.

## I.     Grunt Style's History and Use of the Mark

Grunt Style traces its beginnings to 2009 when Daniel Alarik, a U.S. Army veteran, began selling apparel out of his car.  Alarik marketed his apparel under the marks "Grunt Style," which is a reference to his time as an Army "grunt," and "This We'll Defend," which is an homage to his time in the U.S. Army as a drill sergeant. Alarik lived in Georgia at the time he started the company, so he initially formed the company as a Georgia limited liability company ("Grunt Style Georgia").

However, Alarik moved to Illinois and wanted his company to be an Illinois company.  So, in May 2014, Alarik filed a certificate of termination with the Georgia Secretary of State and Grunt Style Georgia was dissolved on June 11, 2014.  Grunt Style's Illinois articles of organization were filed with the Illinois Secretary of State on June 17, 2014.  That company is the Defendant in this action.  Alarik ensured that the Illinois company worked to wrap up the Grunt Style Georgia's affairs, including fulfilling all pending orders on the Grunt Style Georgia's—www.gruntstyle.com— which is now Defendant Grunt Style's website.

Grunt Style began prominently using the Mark in 2011, featuring it on hangtags, iron-on collar tags, company letterheads, and directly on its shirts.  When using the Mark in this manner, it was included directly next to or directly below the company name.  *See* Dkt. # 167-1, ¶¶ 14, 16–17, 20.  Around the same time, Grunt Style began using the Mark on its online retail store, www.gruntstyle.com, including in the browser tab and header.

2

As the company grew, Grunt Style developed an insignia featuring two crossed rifles—a reference to the United States and its independence—and the initials of the company. Grunt Style also uses a design featuring the insignia with the name of the company above the insignia and the Mark below the insignia. Grunt Style owns Federal Trademark Registration Number 4991746 for this design. The trademarked design is featured on its clothes, both as a tag and on the sleeve, and in the online retail store header. Grunt style also uses the Mark on its own, directly emblazoned on the front, back, and sleeve of shirts, and on the leg of a pair of shorts. *See id.* at ¶ 20.

## II.     TWD's History and Use of the Mark

TWD is a California limited liability company founded by Tim Bauer in 2013. Bauer first became familiar with the phrase "this we'll defend" in 2004 while doing research on historical American flags. The phrase was featured on a flag used by the U.S. War Office in 1778. Bauer wanted to start a brand that "would echo [his] strong sense of gun advocacy and patriotism to others who felt the same way." Dkt. # 176-16, ¶ 3. He conducted research on the use of the phrase with the U.S. Patent and Trademark Office ("USPTO") and on Google. Finding no apparent prior use, he purchased the domain name "www.thiswelldefend.com" in April 2013. Bauer then began designing t-shirts and sold his first shirt in September 2014.

TWD applied for a trademark in May 2015. TWD received its federal trademark for use of the Mark on t-shirts in Class 25 in January 2016. In July 2019, TWD and the U.S. Department of the Army, which owns a federal trademark for use of the Mark in

connection with career services, entered into a written agreement allowing for TWD's use of the Mark for the sale of clothes in Class 25, or online or retail sales in Class 35. TWD continues to use the Mark on its website and on shirts, both on the tag and on the front of the shirt.

TWD alleges Grunt Style's use of the Mark infringes on its federally registered trademark in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a). Grunt Style also brings several counterclaims, including a declaratory judgment for invalidity of TWD's registered trademark; a declaratory judgment of non-infringement of TWD's registered trademark; violations of the Lanham Act, 15 U.S.C. § 1125; common law trademark infringement; common law unfair competition; violations of the Illinois Deceptive Business Practices Act, 815 ILCS 510/1 *et seq.*; and a violation of California's unfair competition law, Cal. Bus. & Prof. Code § 17200, *et seq.* Grunt Style now moves for partial summary judgment.

## **LEGAL STANDARD**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted). "A genuine dispute as to any material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Kvapil v. Chippewa Cnty.*, 752 F.3d 708, 712 (7th Cir. 2014) (cleaned up).

4

In deciding whether a dispute exists, the Court must "construe all facts and reasonable inferences in the light most favorable to the non-moving party." *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1074 (7th Cir. 2016). The nonmovant "must go beyond the pleadings" to demonstrate that there is evidence "upon which a jury could properly proceed to find a verdict in [their] favor." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168–69 (7th Cir. 2013). "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement." *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). And "[c]onclusory statements, not grounded in specific facts" cannot defeat a motion for summary judgment. *Bordelon v. Bd. of Educ. of the City of Chi.*, 811 F.3d 984, 989 (7th Cir. 2016) (cleaned up).

Not all factual disputes will preclude the entry of summary judgment, only those that "could affect the outcome of the suit under governing law." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (citation omitted). In deciding a motion for summary judgment, the Court's sole function is "to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014). The Court cannot weigh conflicting evidence, assess the credibility of witnesses, or determine the ultimate truth of the matter, as these are functions of the jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704–05 (7th Cir. 2011).

Local Rule 56.1 requires a party moving for summary judgment to submit a statement of material facts as to which the movant contends there is no genuine issue

and entitles the movant to judgment as a matter of law. The party opposing the motion for summary judgment is then required to file "any opposing affidavits and other materials referred to in [Federal Rule of Civil Procedure 56(e)]" and a "concise response" to the movant's statement of facts containing "any disagreement, specific references to the affidavits, parts of the record, and other supporting materials." L.R. 56.1(b)(1), (3).

"A general denial is insufficient to rebut a movant's factual allegations; the nonmovant must cite specific evidentiary materials justifying the denial." *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000). Local Rule 56.1(b)(3)(C) is not satisfied by "purely argumentative denials," *id.*, or "evasive denials that do not fairly meet the substance of the material facts asserted," *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000). If a response to a statement of material fact provides only extraneous or argumentative information, this response will not constitute a proper denial of the fact, and the fact is admitted. *See Graziano v. Vill. of Oak Park*, 401 F. Supp. 2d 918, 936 (N.D. Ill. 2005). Similarly, if a statement of fact contains a legal conclusion or otherwise unsupported statement, including a fact that relies upon inadmissible hearsay, such a fact is disregarded. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). "The purpose of the 56.1 statement is to identify for the Court the evidence supporting a party's factual assertions in an organized manner[;] it is not intended as a forum for factual or legal argument." *Malec*, 191 F.R.D. at 585.

## DISCUSSION

Before addressing the merits of the Motion, we must first address evidentiary disputes raised by the parties.

## I.      TWD's Objections

In its Local Rule 56.1 Response, TWD raises evidentiary objections to 28 of Grunt Style's statements of fact.  On a motion for summary judgment, the Court considers "only those facts whose substance would be admissible at trial under a form permitted by the Federal Rules of Evidence, although the form produced at summary judgment need not be admissible." *Wragg v. Vill. of Thornton*, 604 F.3d 464, 466 (7th Cir. 2010) (citing *Celotex*, 477 U.S. at 324).

TWD first raises a bevy of foundational objections to evidence supporting Grunt Style's corporate background and use of the Mark.  TWD mostly objects to interrogatory responses verified by Timothy Jensen, Grunt Style's Chief Operating Officer, saying, for example, "Ex. A (Interrogatory Responses) [Dkt. 167-3] is verified by Timothy Jensen, not Mr. Alarik. Mr. Jensen started working in February 2013 in Illinois for non-party Grunt Style, LLC (Georgia). [Jensen Depo., at 10:18 ("I started work in February of 2013")]."  So, TWD's argument appears to be that Jensen does not have the personal knowledge to testify to those facts.  *See* Fed. R. Evid. 602.  But presumably, the Chief Operating Officer of a company would have personal knowledge of the company's general history and use of a trademark.  Nevertheless, the facts are

independently supported by the declarations of Alarik, the founder of the company. Accordingly, TWD's foundational objections are overruled.

TWD next asserts several vagueness objections regarding Grunt Style Georgia and Grunt Style Illinois. Those objections are overruled as the statements of fact are not vague when read in light of the supporting evidence and surrounding statements of fact.

TWD also attempts to raise several hypertechnical disputes where there is no dispute. For example, Grunt Style asserts "TWD, LLC was formed on or after February 10, 2015." Dkt. # 166-1, ¶ 56. TWD responds "**Disputed in Part**. Plaintiff TWD, LLC was formed on February 10, 2015, not 'after.'" Dkt. # 176-1, ¶ 56 (emphasis in original). Since there is no real dispute, we take these as admissions.

## II. Grunt Style's Objections

In its Reply, Grunt Style asks the Court ignore TWD's proposed expert, which TWD relies heavily on in its Response. In determining the admissibility of an expert opinion under Federal Rule of Evidence 702, the Court acts as a "gatekeeper" to determine whether the proffered expert testimony is reliable and relevant. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999) (discussing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)). In doing so, the Court asks whether: (1) the expert is "qualified by knowledge, skill, experience, training, or education"; (2) the proposed expert testimony will "assist the trier of fact in determining a relevant fact at issue in the case"; (3) the expert's testimony is "based on sufficient facts or data and

8

reliable principles and methods"; and (4) the expert "reliably applies the principles and methods to the facts of the case." *Lees v. Carthage Coll.*, 714 F.3d 516, 521–22 (7th Cir. 2013). The party seeking to introduce the expert testimony bears the burden of demonstrating the expert testimony satisfies Rule 702 by a preponderance of the evidence. *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 782 (7th Cir. 2017). TWD's proffered expert testimony fails on at least two of these inquiries.

First, TWD has not established by a preponderance of evidence that the proposed expert is qualified as an expert. "Proof of qualifications typically includes years of experience, training, publications, degrees, work history, professional affiliations, and other indicia of expertise." *A.S. b/n/f Snider v. Remington Arms Co., LLC*, 2020 WL 1244404, at *3 (S.D. Ind. 2020) (citing *Hall v. Flannery*, 840 F.3d 922, 928 (7th Cir. 2016)). Notably, TWD does not include the proposed expert's resume or curriculum vitae. Instead, TWD relies on the proposed expert's report itself. But the report does little more than state the proposed expert has experience working in the USPTO for seven years from 1980 to 1987, and in private legal practice after 1987. But these general statements, which do not even make clear whether the proposed expert is an attorney or another type of trademark practitioner, are not enough for the Court to determine whether the proposed expert is indeed qualified to offer his opinion. Inclusion of a resume would have allowed for the Court to make a more thorough determination as to his credentials.

9

Second, the proposed expert's report offers only legal conclusions about Grunt Style's use of the Mark. It is axiomatic that "expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible." *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003). The expert here opines that Grunt Style had no prior trademark use of the Mark because its use was minimal and ornamental, but, if there was trademark use of the Mark, it was by Grunt Style Georgia, not Defendant Grunt Style Illinois. Such legal conclusions determine the outcome of Grunt Style's claims and are therefore not admissible.

### III. Motion for Summary Judgment

Turning to the merits of the Motion, Grunt Style argues: it has common law rights in the Mark; the Court must cancel TWD's federally registered trademark because it has superior rights; the Court should dismiss TWD's claims as a matter of law; and the Court should dismiss TWD's affirmative defenses as a matter of law. We address each in turn.

### a. Grunt Style's Common Law Rights in the Mark

Grunt Style asserts it has common law trademark rights in the Mark because it started using the Mark in 2011. TWD challenges this on several grounds. First, TWD says Defendant Grunt Style is separate from non-party Grunt Style Georgia, which first began the alleged use of the Mark. TWD Asserts Grunt Style Georgia did not assign its rights to Defendant Grunt Style in writing, so Grunt Style Illinois has no rights in the Mark. TWD also argues Grunt Style Illinois discontinued its use of the Mark and it has

10

not shown the geographic areas, for example the city or zip codes, in which Grunt Style sold its products. To resolve these arguments, we ask two related questions: (1) whether Grunt Style Illinois is the successor of Grunt Style Georgia; and (2) whether Defendant Grunt Style has common law rights in the Mark. We resolve each question in turn.

### 1. Succession of Grunt Style Companies

"According to the Seventh Circuit, a successor corporation is one that has chosen to stand in the shoes of its predecessor and has chosen to accept the business expectations of those who have dealt previously with that predecessor." *Playboy Enters. Int'l, Inc. v. Smartitan (Singapore) PTE Ltd.*, 804 F. Supp. 2d 730, 735 (N.D. Ill. 2011). Courts find one company is the successor of another: "(1) where there is an express or implied agreement of assumption; (2) where the transaction amounts to a consolidation or merger of the seller corporation; (3) where the purchaser is merely a continuation of the seller; or (4) where the transaction is for the fraudulent purpose of escaping liability for the seller's obligation." *Id.*[1] Further, "[a]ssignments of trademark rights do not have to be in writing, but an implied agreement to transfer requires conduct manifesting agreement, not just conduct that might be characterized as being shady or otherwise inequitable." *TMT N. Am., Inc. v. Magic Touch GmbH*, 124 F.3d 876, 884 (7th Cir.1997) (cleaned up).

---

[1] Though the parties do not argue choice of law, the Court notes Georgia law imposes a similar test. *See Dan J. Sheehan Co. v. Fairlawn on Jones Condo. Ass'n., Inc.*, 780 S.E.2d 35, 38 (Ga. Ct. App. 2015) ("Ordinarily, a successor entity does not assume the liabilities of its predecessor unless (1) there is an agreement to assume liabilities; (2) the transaction is, in fact, a merger; (3) the transaction is a fraudulent attempt to avoid liabilities; or (4) the [successor] is a mere continuation of the predecessor corporation.").

11

Here, Grunt Style Illinois is unquestionably the successor of Grunt Style Georgia. Grunt Style Illinois was founded within a week after the dissolution of Grunt Style Georgia, both companies were founded and managed by Alarik, sell the same product, and Grunt Style Illinois fulfilled the pending orders when Grunt Style Georgia was dissolved. The uncontroverted evidence shows Grunt Style's products were sold in all 50 states and have been continuously sold during the relevant timeframe. Thus, Grunt Style Illinois is the successor to Grunt Style Georgia, and any common law trademark rights owned by Grunt Style Georgia were impliedly assigned to Grunt Style Illinois.

TWD's perfunctory and legally unsupported abandonment and geographic area arguments, waiver issues aside, are meritless and do not change this conclusion. The record shows Grunt Style's clear and continuous use of the Mark. For example, it is undisputed that Grunt Style has used the Mark on shirt collars and sleeves since before TWD was founded. And while TWD seemingly focuses on Grunt Style's sales, this Court has long recognized "[a]n attempt to market a product bearing a trademark, even if unsuccessful, indicates a lack of intent to abandon the mark." *Roulo v. Russ Berrie & Co.*, 1987 WL 9018, at *2 (N.D. Ill. 1987) (Kocoras, J.).

Indeed, our conclusion is in line with other courts in this District. For example, in *Gaffrig Performance Indus.., Inc. v. Livorsi Marine, Inc.*, the court found the implied assignment of a trademark from one company to a second company founded by the owner of the first company. 2003 WL 23144859, at *12 (N.D. Ill. 2003). The court

reasoned the owner "did all he could, short of a written document, to assign" the trademark rights from the first company to the second company because the second company was created "almost immediately" after the first company's "doors were closed" and had "an almost identical workforce" to the first company. *Id.*

Similarly here, Alarik founded Grunt Style Illinois almost immediately after Grunt Style Georgia was dissolved. Further, Alarik himself continued the same operations of Grunt Style Georgia through Grunt Style Illinois with many of the same employees, selling the same products, and fulfilling orders made to Grunt Style Georgia. Thus, the undisputed facts show Grunt Style Illinois is the successor of Grunt Style Georgia and acquired any common law trademark rights Grunt Style Georgia owned.

### 2. Common Law Trademark Rights

"The determination of whether a party has established protectable rights in a trademark is made on a case by case basis, considering the totality of the circumstances." *Johnny Blastoff, Inc. v. L.A. Rams Football Co*., 188 F.3d 427, 433 (7th Cir. 1999). A party may only acquire a protectable right in a mark through the use of the mark in connection with its product, but evidence of actual sales is not necessary to establish ownership. *Id.* at 433–34. "The party seeking to establish appropriation of a trademark must show first, adoption, and second, use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." *Id.* (cleaned up).

13

A trademark user "must show that it has actually used the designation at issue *as a trademark;* i.e., to perform the trademark function of identifying the source of the merchandise to the customers." *Edsal Mfg. Co. v. Vault Brands, Inc.*, 2012 WL 5558849, at \*4 (N.D. Ill. 2012) (cleaned up and emphasis in original). "A trademark need not be particularly large in size or appear in any particular position on the goods, but it must be used in such a manner that its nature and function are readily apparent and recognizable without extended analysis or research and certainly without legal opinion." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 342 (4th Cir. 2001) (cleaned up). "[W]here a slogan or feature is not likely to be perceived as anything other than part of the thematic whole of the ornamentation of an article of clothing, that slogan or feature is not used as a trademark." *Tovey v. Nike, Inc.*, 2014 WL 3510975, at \*8 (N.D. Ohio 2014) (cleaned up). A mark, though, may be both decorative and function as a trademark. *Id.*

Here, the undisputed evidence shows Grunt Style adopted the Mark first, beginning use in April 2011. It used the Mark in a variety of ways, including at trade shows, on collar tags, business cards, invoices, its website, and on the front, back, and sleeves of shirts. Further, the undisputed evidence shows Grunt Style products bearing the Mark were sold in all 50 states. While the Mark was occasionally used in a decorative manner, Grunt Style's continuous use of the Mark in a traditional trademark fashion shows that any decorative use would indicate the source of the goods. Put simply, Grunt Style's continuous use of the Mark shows the Mark would be associated

with Grunt Style's goods. Thus, Grunt Style has indisputably shows it adopted the Mark and used it in a way to identify itself as the adopter of the Mark.

### b. Cancellation of TWD's Federal Trademark

The Lanham Act allows a court to cancel a trademark or order the USPTO to do so. *TE-TA-MA Truth Found.-Family of URI, Inc. v. World Church of Creator*, 297 F.3d 662, 665–66 (7th Cir. 2002) (citing 15 U.S.C. § 1119); *Purepecha Enters., Inc. v. El Matador Spices & Dry Chiles*, 2012 WL 3686776, at *11 (N.D. Ill. 2012) (St. Eve., J.) ("Pursuant to 15 U.S.C. § 1119, federal courts may cancel registration of a trademark when warranted."). The Seventh Circuit made clear where "a registrant's asserted rights to a mark are shown to be invalid, cancellation is not merely appropriate, it is the best course." *Central Mfg., Inc. v. Brett*, 492 F.3d 876, 883 (7th Cir. 2007).

"[E]ven 'a holder of a federally registered trademark is subject to any superior common law rights acquired by another party.'" *RGB Plastic, LLC v. First Pack, LLC*, 184 F. Supp. 3d 649, 670 (N.D. Ill. 2016) (quoting *Allard Enters., Inc. v. Advanced Programming Res., Inc.*, 249 F.3d 564, 572 (6th Cir. 2001)) (cleaned up). Thus, we must determine if the undisputed evidence shows Grunt Style has superior rights in the Mark.

"The party who first appropriates the mark through use, and for whom the mark serves as a designation of source, acquires superior rights to it." *Johnny Blastoff*, 188 F.3d at 434. "It is a bedrock principle of trademark law that trademark ownership is not acquired by federal or state registration, but rather from prior appropriation and

15

actual use in the market." *S.C. Johnson & Son, Inc. v. Nutraceutical Corp.*, 835 F.3d 660, 665 (7th Cir. 2016). A federal trademark registration "establishes only a rebuttable presumption of use as of the filing date." *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 504 (7th Cir. 1992). "Under 15 U.S.C. § 1115(b)(5), a party rebuts that presumption by proving that the mark was adopted without knowledge of the registrant's prior use and has been continuously used by such party or those in privity with him from a date prior to the registration of the mark." *S.C. Johnson*, 835 F.3d at 665 (cleaned up).

Here, the undisputed evidence shows Grunt Style has rebutted that presumption. As previously discussed, it is undisputed Grunt Style began use of the Mark in April 2011. Grunt Style has continuously used the Mark publicly on its clothes, website, and documents ever since. TWD, on the other hand, began its use of the Mark in September 2014. Thus, the undisputed evidence shows Grunt Style has superior rights in the Mark. It cannot be disputed that there is a likelihood of confusion between the two uses of the Mark. Therefore, TWD's federally registered trademark must be cancelled.

### c.    TWD's Claims

Having found Grunt Style has superior rights in the Mark and having cancelled TWD's trademark, TWD's claims of trademark infringement and unfair competition under the Lanham Act therefore fail as a matter of law.

### d.    TWD's Affirmative Defenses

Finally, Grunt Style seeks summary judgment on TWD's affirmative defenses of federal preemption and unclean hands.

It is undisputed the Lanham Act would preempt any common law claim of infringement by Grunt Style during the time TWD owned the federally registered trademark. But TWD's general preemption arguments fail to respond to the specifics of Grunt Style's claims and contains no analysis applying the case law it detailed to the facts of this case. In any event, Grunt Style only asserts common law infringement claims for t-shirt sales before May 27, 2015, the date TWD filed for trademark registration. So, in the Court's view, TWD's preemption defense fails because the alleged infringement occurred before TWD owned a federally registered trademark.

Next, in response to Grunt Style's argument that its unclean hands defense fails, TWD asserts only that "[t]his court's prior ruling upholding plaintiff TWD's unclean hands defense should not be disturbed." Dkt. # 176, p. 15. But the Court's previous order was on a motion to strike based on pleading defects. At this stage, TWD "must offer evidence that would allow a reasonable jury to find for them on [their affirmative] defense." *Oasis Legal Fin. Operating Co., LLC v. Chodes*, 545 F. Supp. 3d 724, 737 (N.D. Ill. 2020). TWD therefore waived any argument against granting Grunt Style's Motion. Moreover, TWD failed to identify a single fact that could support a jury verdict on their unclean hands defense. *See Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995) ("It is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment."). Accordingly, Grunt Styles' Motion is granted on TWD's affirmative defenses.

17

## <u>CONCLUSION</u>

For the reasons mentioned above, the Court grants Grunt Style's Motion for Partial Summary Judgment (Dkt # 166). Telephonic status is set for 5/10/2022 at 10:40 a.m. It is so ordered.

Dated:  04/12/2022

_____
Charles P. Kocoras
United States District Judge