IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GRUNT STYLE LLC,<br><br>    Plaintiff,<br><br>v.<br><br>TWD, LLC,<br><br>    Defendant. | Case No. 18 C 7695<br><br>Hon. LaShonda A. Hunt |

## MEMORANDUM OPINION AND ORDER

Currently before the Court are the pre-verdict and post-trial motions of Plaintiff Grunt Style LLC ("Grunt Style") and Defendant TWD, LLC ("TWD"). Prior to the case being submitted to the jury, TWD filed a motion for judgment as a matter of law, (Dkt. 263), which was taken under advisement. The jury subsequently returned a verdict finding TWD liable for trademark infringement and unfair competition (Claims III, IV, VI) and awarding profits to Grunt Style. (Dkt. 264). TWD now moves to dismiss Grunt Style's remaining claims under the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA") (Claim V) and California Unfair Competition Law, Business and Professions Code ("UCL") (Claim VII) for lack of federal equitable jurisdiction and to deny Grunt Style any award of TWD's profits. (Dkt. 279). Conversely, Grunt Style filed motions requesting that the Court find in its favor on its remaining IUDTPA and UCL claims and reassess damages on the trademark infringement claim pursuant to the Lanham Act, 15 U.S.C. § 1117(a). (Dkts. 275, 277). For the reasons discussed below, the Court denies motion for judgment as a matter of law, grants Grunt Style's motion for determination of liability, denies TWD's motion regarding equitable jurisdiction and award of profits, and denies Grunt Style's motion to determine infringing profits.

1

## BACKGROUND

This case arises from a longstanding dispute between TWD and Grunt Style about superior rights to use of the THIS WE'LL DEFEND trademark (the "Mark"). The Court assumes familiarity with the background and procedural history from the prior rulings on partial summary judgment (Dkt. 188) and motions in limine. (Dkt. 253).

Grunt Style's claims of federal trademark infringement (Claim III), common law trademark infringement (Claim IV), and unfair competition (Claim VI) were tried before a jury in March 2024. The Court and counsel discussed the jury instructions at length, and each side noted any specific objections on the record. With respect to Grunt Style's Lanham Act claim, the Court instructed the jury, in relevant part, as follows:

> This Court has already ruled that Grunt Style has superior rights in THIS WE'LL DEFEND and that there is a likelihood of confusion if TWD uses THIS WE'LL DEFEND. In other words, Grunt Style has trademark rights in THIS WE'LL DEFEND. Whether or not the trademark was registered has no bearing on the validity of Grunt Style's trademark rights.
>
> Therefore, you must determine if TWD used THIS WE'LL DEFEND on t-shirts, by selling t-shirts marked with THIS WE'LL DEFEND prior to May 27, 2015.
>
> Additionally, you must determine if TWD used THIS WE'LL DEFEND in connection with any online retail store services.

(Final Jury Instruction No. 14, Dkt. 269). The Court provided a similar jury instruction regarding Grunt Style's common law trademark infringement claim. (Final Jury Instruction No. 15).

Regarding remedies, the Court instructed the jury as follows:

> If you find TWD liable for trademark infringement under the Lanham Act or the common law, then you must consider the amount of money to award to Grunt Style, if any. This may include profits that TWD made through its infringement and punitive damages.

(Final Jury Instruction No. 16). The Court also instructed the jury regarding how to calculate TWD's profits:

> Plaintiff may recover the profits TWD gained from the infringement.
>
> Profit is determined by deducting expenses from gross revenue. Gross revenue is all of the money TWD received due to use of the trademark.
>
> Grunt Style is only required to prove TWD's gross revenue. TWD is required to prove any expenses that it argues should be deducted in determining its profits.
>
> Grunt Style is entitled to recover TWD's total profits from its use of the trademark, unless TWD proves that a portion of the profit is due to factors other than use of the trademark, such that this portion may be deducted.

(Final Jury Instruction No. 17). Relatedly, the Court included the following jury instruction regarding TWD's failure to produce sales information:

> During the course of this case, Grunt Style sought discovery of TWD's total sales from its use of the trademark THIS WE'LL DEFEND. TWD produced some of its sales information and it had an obligation to supplement its production of sales information. TWD did not produce sales information for the time period of December 2020 through April of 2022 to Grunt Style. When considering what damages to award, you may make all reasonable extrapolations from the sales data TWD did provide and presume that TWD withheld the unproduced sales data because of its magnitude.

(Final Jury Instruction No. 20).

The Court also provided the following instruction to the jury regarding willfulness:

> If you find that TWD is liable for infringement, you must also determine whether Grunt Style has proven that, at the time TWD used the trademark TWD acted willfully. TWD acted willfully if it knew that it was infringing Grunt Style's trademark or if it acted with indifference to Grunt Style's trademark rights.

(Final Jury Instruction No. 18).

The jury deliberated and reached the following verdict:

1. TWD was liable for trademark infringement under the Lanham Act for its use of the Mark on t-shirts prior to May 27, 2015 (Claim III);

2. TWD was liable for trademark infringement under the Lanham Act for its use of the Mark in connection with its offering of online retail store services (Claim III);

3. TWD was liable for common law trademark infringement (Claim IV) and unfair competition (Claim VI) for its use of the Mark on t-shirts prior to May 27, 2015;

4. TWD was liable for common law trademark infringement (Claim IV) and unfair competition (Claim VI) for its use of the Mark in connection with its offering of online retail store services;

5. TWD's infringement for its use of the Mark on t-shirts prior to May 27, 2015 was not willful;

6. TWD's infringement for its use of the Mark in connection with its offering of online retail store services was not willful; and

7. Punitive damages were not appropriate.

(*See* Minute Order, Dkt. 264). With respect to its finding that TWD was liable for trademark infringement under the Lanham Act for use of the Mark in connection with its offering of online retail store services (Claim III), the jury found the amount of TWD's profits to be awarded as damages to Grunt Style was $739,500.00. (*Id.*)

Grunt Style's IUDTPA and UCL claims were not tried to the jury because they are equitable claims. Thus, the parties now ask that the Court make a determination of liability. Additionally, the parties each filed motions requesting that the Court reconsider the jury's award of profits. These motions, along with TWD's previously filed motion for judgment as a matter of law, are fully briefed and ripe for ruling.

## **LEGAL STANDARD**

Pursuant to Rule 50(a), after a jury verdict, the Court may "direct the entry of judgment as a matter of law" if "a reasonable jury would not have a legally sufficient evidentiary basis to find" as the actual jury did. *Ruiz-Cortez v. City of Chi.*, 931 F.3d 592, 601 (7th Cir. 2019) (quoting Fed. R. Civ. P. 50(a), (b)). This is a high bar. *Id*. "The Court may grant judgment as a matter of law

only when 'there can be but one reasonable conclusion as to the verdict.'" *Kyles v. Beaugard*, No. 15 C 8895, 2023 WL 5277882, at *7 (N.D. Ill. Aug. 16, 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). In ruling on a motion for judgment as a matter of law, "[t]he district court must 'give the nonmovant the benefit of every inference while refraining from weighing for itself the credibility of evidence and testimony.'" *Kyles*, No. 15 C 8895, 2023 WL 5277882, at *7 (quoting *Ruiz-Cortez*, 931 F.3d at 601).

Where an action is "tried on the facts without a jury," Rule 52 requires the district court to "find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a). In doing so, the district court must "explain the grounds" for its decision and provide a "reasoned, articulate adjudication." *Arpin v. U.S.*, 521 F.3d 769, 776 (7th Cir. 2008).

## DISCUSSION

Three main issues are presented for resolution: (1) whether TWD is entitled to judgment as a matter of law on Grunt Style's claims that were submitted to the jury, (2) whether Grunt Style is entitled to judgment in its favor on its remaining IUDTPA and UCL claims, and (3) whether the Court should adjust the jury award regarding TWD's profits.

First, TWD argues that no reasonable jury could find for Grunt Style. Second, Grunt Style contends that it is entitled to judgment in its favor on the remaining equitable claims as they are analyzed under the same standards as the Lanham Act and common law trademark infringement claims, and thus the jury's verdict necessarily informs the Court's determination. However, TWD argues that the Court lacks jurisdiction over these equitable claims because Grunt Style had an adequate remedy at law but decided to withdraw the request for actual damages. Finally, TWD maintains that, notwithstanding the jury verdict, the Court should find that Grunt Style is not entitled to any of its profits because TWD's conduct was not willful. Grunt Style, on the other

5

hand, urges the Court to disregard the jury verdict and instead award Grunt Style the full amount of TWD's profits.

Having reviewed the record, the parties' submissions, and the relevant case law, the Court finds that (1) TWD is not entitled to judgment as a matter of law, (2) Grunt Style is entitled to judgment in its favor on the IUDTPA and UCL claims, and (3) there are no grounds for the Court to overturn, increase, or decrease the jury's award of TWD's profits in the amount of $739,500.00.

### I.     **TWD – Motion for Judgment as a Matter of Law**

TWD contends that the law as set forth in the final jury instructions entitled TWD to judgment in its favor because (1) there is no evidence that TWD's profits were caused by TWD's infringement of Grunt Style's trademark rights and (2) there was no willful infringement by TWD. But those arguments are nonstarters, since causation and willful infringement are not elements of trademark infringement. *See Phoenix Ent. Partners v. Rumsey*, 829 F.3d 817, 822 (7th Cir. 2016) (To prevail on a trademark infringement claim under the Lanham Act, "a plaintiff must be able to show (1) that its mark is protectable, and (2) that the defendant's use of that mark is likely to cause confusion among consumers."); *Poneman v. Nike, Inc.*, 161 F. Supp. 3d 619, 631 (N.D. Ill. 2016) ("To prevail on a common law claim of trademark infringement, the plaintiff must show: (1) it has a protectable ownership interest in the mark; and (2) the defendant's use of the mark is likely to cause consumer confusion, infringing on the plaintiff's rights to the mark."). Therefore, the jury was not required to find causation and/or willfulness in order to determine that TWD infringed Grunt Style's trademark rights.

Furthermore, TWD contends that Grunt Style was not allowed to seek punitive damages because Grunt Style withdrew its request for actual damages. While the Court instructed the jury

on punitive damages, the jury ultimately found they were not appropriate here. TWD's request for judgment as to punitive damages, then, is essentially moot.

Finding no basis for entry of judgment as a matter of law for TWD, the Court denies that motion.

## II. Determination of Liability on IUDTPA and UCL Claims

Grunt Style argues that it is entitled to judgment in its favor on the remaining equitable claims because the jury's finding that TWD violated the Lanham Act and engaged in common law trademark infringement support a determination that TWD violated the IUDTPA and UCL.[1] "[I]n ruling on the equitable claims, the Court is bound both by the jury's explicit findings of fact and those findings that are necessarily implicit in its verdict." *Sunny Handicraft (H.K.) Ltd. v. Envision This!, LLC*, No. 14 C 1512, 2019 WL 4735459, at *2 (N.D. Ill. Sept. 27, 2019) (citing *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 790 F. Supp. 2d 708, 722 (N.D. Ill. 2002)); *see also Int'l Fin. Servs. Corp. v. Chromas Techs. Can., Inc.*, 356 F.3d 731, 735 (7th Cir. 2004) ("[T]he jury's determination of factual issues common to both the legal and equitable claims . . . bind[s] the court.").

Grunt Style's equitable claims are analyzed under the same standards as its Lanham Act and common law trademark infringement claims. *See AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 619 (7th Cir. 1993) ("The state unfair competition claim is analyzed under the likelihood of confusion standard and thus mirrors our infringement analysis."); *UL LLC v. Am. Energy Prod., LLC*, 358 F. Supp. 3d 753, 758 (N.D. Ill. 2019) (IUDTPA claims "are subject to

---

[1] Grunt Style's motion for determination of liability indicates that the request arises under Federal Rule of Civil Procedure 50(a); however, the Court finds it more appropriate to consider the parties' arguments about the equitable claims under Federal Rule of Civil Procedure 52(a). *Compare* Fed. R. Civ. P. 50(a)(2) ("A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury.") to Fed. R. Civ. P. 52(a) ("In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately").

precisely the same standards as the federal infringement claims."); *Morningware, Inc. v. Hearthware Home Prod., Inc.*, 673 F. Supp. 2d 630, 639 (N.D. Ill. 2009) ("Where a plaintiff's factual allegations under the [IUDTPA] also form the basis for plaintiff's claim under the Lanham Act, the legal inquiry is the same under both statutes."); *Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991) ("An action for unfair competition under Cal.Bus. & Prof.Code §§ 17200 *et seq.* is 'substantially congruent' to a trademark infringement claim under the Lanham Act.").

Notwithstanding the overlapping legal analysis, TWD argues that the Court should reach a different outcome on Grunt Style's equitable claims for three reasons. First, TWD contends the IUDTPA claim is improper because TWD's infringement did not "occur primarily and substantially in Illinois." (Resp. at 5) (citing *Avery v. State Farm Mut. Auto Ins. Co.*, 216 Ill. 2d 100, 184-85 (2005)). In *Avery*, the plaintiffs brought a class action suit against an insurance company alleging claims for breach of contract and violation of the Illinois Consumer Fraud Act ("ICFA"). *Id*. at 109. The insurance company argued that the class representative was unable to state a claim under the ICFA because he resided in Louisiana, not Illinois. *Id*. at 180. The Illinois Supreme Court agreed, holding that "a plaintiff may pursue a private cause of action under the [ICFA] if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Id*. at 187. However, that was not the situation in *Avery* as "[t]he overwhelming majority of the circumstances" related to the plaintiffs' claims occurred outside of Illinois. *Id*. at 188.

Here, TWD maintains that the events did not occur "primarily and substantially" in Illinois because TWD is a California corporation with its principal place of business in California and Grunt Style is a Delaware corporation with its principal place of business in Texas.

As Grunt Style points out, though, residency is not the only factor that is relevant to the analysis. *See Specht v. Google, Inc.*, 660 F. Supp. 2d 858, 866 (N.D. Ill. 2009) ("Courts consider several factors to determine whether a transaction occurred 'primarily and substantially' in Illinois, bringing a claim under the ambit of the [IUDTPA], including: (1) the plaintiff's residence, (2) where the misrepresentation was made, (3) where the damage to the plaintiff occurred, and (4) whether the plaintiff communicated with the defendant in Illinois.").

At trial, Grunt Style confirmed TWD's sales records, which established that TWD made sales through Amazon and its website, www.thiswelldefend.com, throughout the United States, including Illinois. (Trial Tr. 316:16-317:16, 319:19-320:11, Dkt. 290). And Grunt Style confirmed that it had a substantial presence in Illinois, including an office with over 375 employees in Carol Stream, Illinois. (Trial Tr. 264:23-264:15). Such circumstances are sufficient to establish that the events at issue in this case occurred primarily and substantially in Illinois. *See Specht*, 660 F. Supp. 2d at 866 (N.D. Ill. 2009) (finding there was a sufficient nexus to Illinois where plaintiff resided and ran his business in Illinois and the "alleged infringement took place on the Internet and was international in scope, presumably occurring in Illinois"); *Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLP*, No. 16 C 3401, 2022 WL 910862, at *3 (N.D. Ill. Mar. 29, 2022) (finding that there was enough evidence for the jury to find in favor of plaintiff on its IUDTPA claim where plaintiff was an Illinois entity, and "the evidence showed, that [defendant's] false advertising claims occurred nationwide, including in Illinois."); *Purepecha Enterprises, Inc. v. El Matador Spices & Dry Chiles*, No. 11 C 2569, 2012 WL 3686776, at *15 (N.D. Ill. Aug. 24, 2012) (finding that plaintiff's use of the mark in the Chicago area in conjunction with selling its product was sufficient to form the basis of defendant's IUDTPA claim).

Next, TWD argues that Grunt Style's IUDTPA and UCL claims should be dismissed as the Court "has no equitable power to award Grunt Style any of TWD's profits because Grunt Style voluntarily withdrew its legal claim for damages (which constituted an adequate remedy at law)." (TWD's Mem. at 8, Dkt. 280). Grunt Style responds that TWD's arguments are misplaced because Grunt Style is seeking equitable relief only as a remedy for the violations of the IUDTPA and UCL.

In support of its contention, TWD relies on *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020). There, the plaintiff filed a punitive class action for false advertising against a company that marketed and sold dietary supplements. *Id*. at 837. Initially, the complaint sought injunctive relief and restitution under the UCL and the Consumers Legal Remedies Act ("CLRA"), as well as damages for defendant's failure to correct the alleged CLRA violation. *Id*. at 838. Less than two months before trial, plaintiff amended the complaint to remove the CLRA damages claim. *Id*. Thereafter, defendant moved to dismiss plaintiff's amended complaint arguing that plaintiff failed to establish that she lacked an adequate remedy at law as required by federal equitable principles. *Id*. The district court granted defendant's motion, and the Ninth Circuit affirmed, holding that "the traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and CLRA in a diversity action." *Id*. at 838, 844. Accordingly, that court held that plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harms under the UCL and CLRA." *Id*. at 844.

Grunt Style argues that *Sonner* is irrelevant here because "restitution under state law is not at issue in this litigation[,]" as the only relief that is available for Grunt Style's IUDTPA and UCL claims is injunctive relief. (Grunt Style's Resp. at 4, Dkt. 282). The Court agrees. *See Israel Travel*

10

*Advisory Serv. Inc. v. Israel Identity Tours, Inc.*, No. 92 C 2379, 1994 WL 30984, at *5 (N.D. Ill. Jan. 28, 1994), *aff'd*, 61 F.3d 1250 (7th Cir. 1995) ("[IUDTPA] only provides a cause of action for injunctive relief; damages are not available[.]"); *Kryzhanovskiy v. Amazon.com Servs., Inc.*, No. 22 CV 1292, 2022 WL 2345677, at *3 (E.D. Cal. June 29, 2022) ("A UCL action is equitable in nature, damages cannot be recovered, and prevailing plaintiffs are generally limited to injunctive relief and restitution.").

Moreover, "[w]hile the Ninth Circuit's decision in *Sonner* bars equitable restitution for past harms that are otherwise subject to an adequate legal remedy, it does not bar the issuance of an injunction to prevent future harms." *Kryzhanovskiy*, 2022 WL 2345677, at *4 (citing *Brooks v. Thomson Reuters Corp.*, No. 21 C 01418, 2021 WL 3621837, at *10 (N.D. Cal. Aug. 16, 2021)); *see also Sonner*, 971 F.3d at 844 (A plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for *past harm*.") (emphasis added); *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 687 (N.D. Cal. 2021) ("It makes sense that *Sonner* may sometimes bar equitable restitution when damages are available because, as in *Sonner* itself, equitable restitution may seek to compensate a plaintiff for the same past harm as monetary damages. . . . But, at least on the facts of a case like this, California's consumer protection laws permit courts to issue injunctions that serve different purposes and remedy different harms than retrospective monetary damages."). Here, Grunt Style seeks a "permanent injunction precluding TWD from continuing to interfere with Grunt Style trademarks and business." (Grunt Style Liability Mem. at 2, Dkt. 276). Consequently, Grunt Style's request for the issuance of an injunction to prevent future harm is not barred by *Sonner*.

Finally, TWD argues that Grunt Style is not entitled to a permanent injunction because Grunt Style made no effort to satisfy the four required factors. In response, Grunt Style asserts the

11

remedy of a permanent injunction is outside of the scope of Grunt Style's motion, which seeks only a determination of liability.

The Court notes that the motion expressly requests the entry of a "permanent injunction precluding TWD from continuing to interfere with Grunt Style trademarks and business." (Grunt Style's Liability Mem. at 2). But Grunt Style did include a footnote explaining that "for efficiency, provided liability under the IUDTPA and/or [UCL] is found, Grunt Style will address the scope of injunctive relief under all claims giving rise to equitable remedies in a single post-trial Rule 59(e) motion." (Grunt Style's Mem. at 7, n.2).

In sum, because the jury found TWD liable for trademark infringement under the Lanham Act and common law, and the Court is bound by such findings, the Court finds in favor of Grunt Style on its remaining IUDPTA and UCL claims. However, the Court declines to enter a specific remedy at this time. Accordingly, Grunt Style's motion for determination of liability is granted and TWD's motion regarding equitable jurisdiction is denied.

### III. Award of TWD's Profits

Even though both parties requested a jury trial, they now insist that the Court should disregard the jury's damages award for $739,500.00 of TWD's profits in connection with TWD's use of the Mark for online retail store services. Specifically, TWD argues that the Court should find that Grunt Style is not entitled to any of TWD's profits as TWD's conduct was not willful. On the other hand, Grunt Style argues that it should be awarded the full $3.8 million of gross revenue as profits because TWD failed to introduce any offsetting evidence of its costs and expenses.

TWD's position rests upon the U.S. Supreme Court's opinion in *Romag Fasteners, Inc v. Fossil, Inc.*, 590 U.S. 212 (2020). Plaintiff there, a seller of handbag fasteners, alleged that defendant, an accessory manufacturer, infringed its trademark and falsely represented that its

fasteners came from plaintiff. *Id*. at 214. After trial, a jury agreed with plaintiff and found that defendant had acted "in callous disregard" of plaintiff's rights. *Id.* At the same time, however, the jury rejected plaintiff's claim that defendant had acted willfully. *Id.* Accordingly, the district court refused plaintiff's request for an award of defendant's profits, reasoning that "controlling Second Circuit precedent requires a plaintiff seeking a profits award to prove that the defendant's violation was willful." *Id*. The Supreme Court disagreed and held that while "a trademark defendant's mental state is a highly important consideration in determining whether an award of profits is appropriate[,]" it is not an "inflexible precondition to recovery[.]" *Id.* at 219.

TWD contends that, pursuant to *Romag Fasteners*, "district courts have refused to award a plaintiff a defendant's profits under 15 U.S.C. § 1117(a) where defendant's willful mental state was lacking." (TWD's Mem. at 13, Dkt. 280). TWD thus urges the Court to follow the trend of these courts and hold that Grunt Style is not entitled to TWD's profits.

In further support of its position, TWD contends that its conduct was not willful as it reasonably believe that it was not infringing because (1) TWD was using its registered trademark, (2) Amazon named TWD's storefront pursuant to its registered trademark, (3) TWD had an Amazon storefront for years before Grunt Style obtained its Amazon storefront, (4) Grunt Style abandoned its trademark application for the Mark, and (5) TWD stopped selling t-shirts and ceased use of its website, www.thiswelldefend.com, after entry of the partial summary judgment ruling cancelling TWD's trademark registration. Grunt Style counters that "the record is replete with TWD's total disregard for Grunt Style's rights." (Grunt Style's Resp. at 6). Specifically, Grunt Style points out that TWD had a second website, www.2ndamendment.com, but decided to sell its t-shirts on the infringing website and Amazon store instead, and then continued to operate its store after Grunt Style filed this lawsuit.

13

The jury heard the evidence regarding willfulness at trial and determined that TWD's conduct was not willful. Both sides fully presented their competing positions and the jury apparently found TWD's argument on this point, at least, more persuasive. The Court sees no reason to overturn the jury's finding.

Moreover, the Court concludes that even without a finding of willfulness, it was legally proper for the jury to award TWD's profits. The Supreme Court's holding in *Romag Fasteners* is clear—willfulness is not a precondition to a profits award in a trademark infringement suit. 590 U.S. at 219. Thus, despite what other district courts may have done, this Court must follow binding precedent.

Additionally, TWD argues that Grunt Style is not entitled to any of TWD's profits because there was no evidence of actual confusion, and therefore, Grunt Style did not prove causation. In response, Grunt Style argues that actual confusion is not a prerequisite for damages; instead, all that is required to prove liability is likelihood of confusion. The Court agrees with Grunt Style.

In support of its position, TWD cites *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014). There, the Supreme Court held that "a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133. Notably, the focus of the inquiry in *Lexmark* was whether the appellee was "within the class of plaintiffs whom Congress has authorized to sue under § 1125(a)." The issue was not whether the appellee was entitled to a portion of the appellant's profits, as is the case here. Thus, *Lexmark* is inapposite. As addressed *supra*, all that Grunt Style is required to prove is that (1) its mark is protectable and (2) TWD's use of that

14

mark is likely to cause confusion among consumers. *Phoenix Ent. Partners*, 829 F.3d at 822. Accordingly, TWD's motion for an equitable award of profits is denied.

Having found that TWD's arguments lack merit, the Court turns to Grunt Style's arguments regarding whether the Court should enhance the jury award. As an initial matter, Grunt Style argues that the jury award should be treated as advisory because recovery of profits is an equitable remedy that does not give rise to the right to a jury trial. Thus, Grunt Style contends that the Court should disregard the jury's award and make its own findings of fact and conclusions of law. Throughout this case, though, Grunt Style demanded a jury trial. (*See, e.g.*, Am. Countercl., Dkt. 41). However, Grunt Style now insists that because it eliminated its request for actual damages—the day before this case went to the jury—the jury's award should be totally disregarded.

"While the court agrees that the elimination of a request for actual damages also eliminated the parties' right to a jury trial, the court rejects [Grunt Style's] argument that this renders the jury verdict advisory." *Fabick, Inc. v. JFTCO, Inc.*, No. 16 C 172, 2019 WL 1320298, at *1 (W.D. Wis. Mar. 22, 2019), *aff'd*, 944 F.3d 649 (7th Cir. 2019) (internal quotation omitted) ("[Defendant] consented to being bound by a jury verdict both explicitly and implicitly under Fed. R. Civ. P. 39(c)(2). [Defendant] cannot now withdraw its consent because it is unhappy with the outcome."). As such, the Court focuses its inquiry on determining whether the jury's award was inadequate or excessive. *See* 15 U.S.C. §1117(a) ("The court shall assess such profits and damages or cause the same to be assessed under its direction. . . . If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.").

"In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a).

15

Grunt Style argues that the jury award should be increased because it presented evidence of TWD's sales, but TWD failed to present any evidence of its costs and expenses. In response, TWD contends that Tim Bauer, the owner of TWD, testified regarding the expenses associated with selling on Amazon.

At trial, Bauer was asked whether there were any fees associated with selling products on Amazon. (Trial Tr. 362:17-18). Grunt Style objected based on lack of foundation, which the Court overruled. (Trial Tr. 362:20-21). Bauer then proceeded to explain that when he first started selling on Amazon the fees were about 35%, and they increased over time to approximately 45%. (Trial Tr. 362:23-25). Additionally, Bauer testified that TWD spent approximately 20% of gross sales on advertising and 25% of gross sales went towards the costs of goods. (Trial Tr. 364:24-365:6). Thus, Bauer estimated that TWD would take home about 20% of its sales as profits. (Trial Tr. 365:6-7). TWD believes the jury credited Bauer's testimony and awarded approximately 20% of its gross sales. Grunt Style contends that Bauer's testimony is insufficient to establish costs and expenses because TWD failed to produce the underlying documents in discovery.

Prior to trial—in the motion in limine ruling and at the final pretrial conferences—the Court considered arguments about the extent to which TWD could present evidence of sales and costs and expenses that had not been timely produced during discovery. While the Court generally held that late-produced documents would not be admitted into the record, it did not preclude witnesses with knowledge from offering testimony on the topic. Bauer was examined and cross-examined on these matters, and the jury had a chance to assess his credibility and determine the weight to be given to his testimony. Final jury instruction no. 20 stated the jury could draw an adverse inference against TWD with respect to the missing sales information from 2020 to the present. But final jury

16

instruction no. 17 also stated the jury could deduct a portion of the profit due to factors other than use of the trademark, if proven by TWD.

The jury verdict form did not contain a special interrogatory, which would have required the jury to provide an explanation for its calculation of the profits award. Thus, the Court cannot say for certain that the jury relied on Bauer's testimony, or the fact that TWD had a registered trademark from 2015 until 2022, or some other reason for rejecting both Grunt Style's suggestion of $3.8 million in damages and TWD's suggestion of zero damages. But there was evidence in this case from which a reasonable jury could have found that deductions were warranted in order to determine an award of profits attributable to the infringing activity. Because the jury's award here is supported by some evidence in the case, the Court sees no reason to disturb it. Accordingly, Grunt Style's motion to determine infringing profits is denied.

## CONCLUSION

For all the foregoing reasons, TWD's motion for judgment as a matter of law and TWD's motion regarding equitable jurisdiction and award of profits are denied, Grunt Style's motion for determination of liability is granted, and Grunt Style's motion to determine infringing profits is denied.

**DATED:** November 22, 2024　　　　　　　　　　**ENTERED:**

*LaShonda A. Hunt*
_____
LaShonda A. Hunt
United States District Judge