# EXHIBIT A

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

**GRUNT STYLE LLC,** **No. 25-1305**

Plaintiff-Appellee,

v.

**TWD, LLC,**

Defendant-Appellant.

## ORAL ARGUMENT

January 29, 2026
Chicago, Illinois

## UNOFFICIAL TRANSCRIPT

**BEFORE:**

HON. KENNETH F. RIPPLE, Circuit Judge
HON. JOHN Z. LEE, Circuit Judge
HON. JOSHUA P. KOLAR, Circuit Judge

**APPEARANCES:**

DARREN J. QUINN, for Defendant-Appellant TWD, LLC
MATTHEW "CHIP" DE PRETER, for Plaintiff-Appellee Grunt Style LLC

TRANSCRIPT NOTE: This is an unofficial transcript prepared from the public audio recording. Judicial speakers are collectively designated "THE COURT". Bracketed text identifies an uncertain word or name.

THE COURT: We will now proceed with the second case today. That is Grunt Style LLC versus TWD, LLC. And we will hear first from Mr. Quinn, whenever you're ready.

MR. QUINN: Good morning. May it please the Court, Darren Quinn on behalf of Appellant TWD, LLC.

MR. QUINN: My argument this morning will focus on why this Court should reverse the partial summary judgment against TWD on its trademark-infringement claims against Grunt Style. The Court has de novo review. As the nonmoving party, TWD is entitled to all reasonable inferences. As the owner of the federally registered mark THIS WE'LL DEFEND for T-shirts, TWD had a strong presumption of validity and exclusive use. As the owner of the federally registered trademark THIS WE'LL DEFEND, TWD's federal rights preempted any conflicting state rights. And as this Court has repeatedly said, motions for summary judgment in trademark-infringement cases must be approached with great caution. And finally, Grunt Style had the burden to show that it owned unregistered common-law rights in all 50 states on T-shirts. Now, Grunt Style's opposition leads off: The entire case rests on the singular issue of trademark priority.

THE COURT: Before we get there, Counsel, is this really subject to trademark protection, common-law or federal protection, this phrase?

MR. QUINN: The phrase is entitled to federal trademark protection, as has already been shown by the registration, and by definition it's --

THE COURT: We're not bound by that. I'm just wondering if this is -- it seems to me this is a historical phrase that is pretty much laced into the fabric of the United States' history, and I just don't see where it's subject to trademark protection by any commercial entity.

MR. QUINN: Thank you, Your Honor. I think the issue would be, THIS WE'LL DEFEND is an arbitrary phrase to describe a T-shirt. You don't say, 'Hand me this will defend.' It's a shirt. It's arbitrary. It's a brand, and it's presented as a brand in the neck label.

THE COURT: How about -- how about DON'T TREAD ON ME? Would that be subject to trademark protection?

MR. QUINN: It is. And actually my client, in a prior company, Bauer Bros., owned that federal trademark. That was the

trademark case that I did against Nike in the Ninth Circuit.

THE COURT: Was it ever challenged?

MR. QUINN: It was challenged. The Ninth Circuit said that plaintiff Bauer Bros. had the registered trademark DON'T TREAD ON ME, and it was entitled to a presumption of validity. It's an unpublished decision, but that's what the Ninth Circuit said. I can provide that cite if the Court wishes. Any further questions?

THE COURT: No, thank you. I think I have your position on it.

MR. QUINN: Thank you.

THE COURT: Counsel, when you're responding to Judge Ripple, it sounded to me like you're trying to say that what you're saying is it really means 'this will defend the T-shirt,' not the country or this or that. Is that really how these are marketed? I didn't read any of the advertisements or anything to suggest someone's wearing that T-shirt saying, 'I'm going to defend the T-shirt.'

MR. QUINN: My client sold it as the THIS WE'LL DEFEND brand. So

when you look in the neck label, it's a THIS WE'LL DEFEND brand T-shirt. And an interesting point that's brought out in the opening: The U.S. Army, that has the motto THIS WE'LL DEFEND, recognized and respected TWD's trademark rights. They had an agreement saying, 'Yes, we respect it. You can use it on clothing. You can use it on an online store that sells clothing.' And we respected the Army and said, 'You can use your motto, THIS WE'LL DEFEND.' And so if you wanted a clearer example than that, the U.S. Army, whose motto is THIS WE'LL DEFEND, and its lawyers that are in charge of licensing with respect to Army goods and services, including T-shirts, says, 'Yes, I recognize and respect it.' How do you get clearer than that? Good question, Your Honor. Did I answer your question?

THE COURT: Yeah. I think what we're struggling with is -- and it wasn't really addressed in either of the briefs, and probably because both sides want it to be a trademark of some kind and the dispute is who has prior use and who owns it -- but I think that the concern arises out of trying to figure out in what circumstances a phrase that has been used for eons can be converted into a trademark to designate the source of a particular item or service. I think that's kind of where it comes from. And I think

that the case that you mentioned, the DON'T TREAD ON ME case, I think it's something that we'll take a look at. I don't know if you're aware of other phrases, historical phrases like that, that have been contested and have been held valid. I know I'm putting you on the spot. I don't expect you to know it, but I'm just wondering whether you're aware of any other cases that would deal with issues like that.

MR. QUINN: It would have been in the briefing in the Nike -- Bauer Bros. versus Nike case regarding DON'T TREAD ON ME. I will alert the Court: Really what you're raising is a failure-to-function-as-a-trademark issue, and that's a hot issue right now in the Federal Circuit. I don't have the cite. It just came down. Excuse my language, but the issue is whether or not they could get a trademark in the word FUCK, F-U-C-K. And so the issue was there was a TTAB precedential opinion that talked about failure to function, and then the Federal Circuit said, 'Look, we want some more.' They reversed, but they said basically, 'We want some more guidelines as to what that means on failure to function.' And so they really didn't have a problem with that word FUCK being a trademark, right? And that's a very commonly used word. Now, in this case, THIS WE'LL DEFEND is not commonly used, not like that

word. And with respect to describing a brand of T-shirts, THIS WE'LL DEFEND is arbitrary. And certainly neither side raised that issue before the district court, and the district court had no occasion to address it.

THE COURT: Well, not the arbitrariness, but I mean just whether or not the phrase can function as a trademark per se.

MR. QUINN: Well, we argue very strenuously that when Grunt Style uses THIS WE'LL DEFEND on the front of a T-shirt, that's a failure to function as a trademark fundamentally, because they're in the business of selling T-shirts. They sell tens of thousands of these. T-shirts convey a message. That's the point. It's not trying to convey a trademark. It's conveying a message. And so that's a whole failure to function, and that's the way the Trademark Office looks at it as well. There's references to the TMEP, which is the Trademark Manual of Examining Procedure, saying that consumers -- and ultimately, how do consumers look at this? They look at a shirt. They say, 'Oh, that's an interesting shirt.' They don't say, 'Oh, that's a brand.' If they see something uniformly all the time, like Grunt Style has on its sleeves, the composite mark with the six different elements, yeah,

that's a trademark. But Grunt Style can't sever that bottom phrase, THIS WE'LL DEFEND, from that. This Court has said repeatedly -- in fact, very recently in the Illinois Tamale case, but before that in the Grubhub case -- that you have to look at a trademark as a whole, and you can't sever the individual elements. And that really goes to -- I want to make this point. So on Grunt Style's composite mark, they have a registered mark on that. They said, 'Look, nothing's conflicting.' The Trademark Office said, 'Yeah, nothing's conflicting,' including our prior registration or application for THIS WE'LL DEFEND. But it has six elements. And if you look at the description of the mark, which is Exhibit 20, summary-judgment Exhibit 21, which is Docket 176-9, it's got the description of the mark with the six elements. You've got two muskets with barrels crossed. You've got the words GRUNT STYLE above the muskets, the letters GS centered beneath the muskets. GS, by the way, is the largest font. You've got the letters US on the left side, the number 1776 on the right. And then at the very bottom, you have THIS WE'LL DEFEND beneath the muskets. That's six elements. You don't get to sever that. The Trademark Office said it. Our case law says that. That's not how people understand it.

THE COURT: It seems to me, though, that the district court's summary-judgment ruling was a bit broader than that in finding that Grunt Style had used the motto in, for example, its advertising at trade shows and as part of kind of just identifying itself as a company, and not limiting it just to the T-shirts.

MR. QUINN: That's a good question. Good point, too. All right. So TWD owns a trademark on goods. If you want to establish priority to knock out that trademark, you need to show a trademark on goods. All right? So that's not a service mark on a website. That's not a letterhead. That's not a banner at a trade show. You need to show what's on the goods. And when you look at it that way, they've got a bunch of old, discontinued T-shirts that were sold a half a dozen times, just a handful of times in each state, certainly not all 50. And they're used in an ornamental manner, just like we just said. We really focused on that one skull and crossbones with AMERICA as the biggest, and it's got US and 1776. It's got seven elements. That's even more than the composite mark. Are you saying that because it was on the front of the T-shirt that Grunt Style has a trademark in US and 1776? How about the top word AMERICA? They own a trademark in AMERICA? No. I want to reserve some time for rebuttal.

THE COURT: Counsel, let me -- I'd like you to address briefly the prejudgment interest. I mean, you're citing to [Lachlan (phonetic)], Gorenstein as well. If we were to take your position on prejudgment interest, are we revisiting Gorenstein?

MR. QUINN: You know, I don't know. I think that the Court has the power to interpret the statute based on the circuit split, because now there's definitely a circuit split and say, this is -- you know, there is no prejudgment interest. I don't know whether or not, from a circuit point, if that has to be done en banc or not. I'm going to leave that to you. Do you have any rule that wouldn't? The statute itself, when (b) says you get prejudgment interest, (a) doesn't. And Gorenstein didn't grapple with that tension as much, but things have changed since Gorenstein. I mean --

THE COURT: The statute hasn't changed.

THE COURT: So it's just an argument that wasn't correct in Gorenstein, but you'd agree that the holding of Gorenstein controls?

MR. QUINN: I guess when the Seventh Circuit says something, that's Seventh Circuit law. I don't know what the procedure would be. Certainly, an en banc review could resolve a split if there's an issue, or if a Seventh Circuit opinion has to change. I just don't know exactly your procedure. I'm sorry. May I reserve the rest for rebuttal?

THE COURT: Yes. No further questions.

MR. QUINN: Thank you.

THE COURT: Thank you. Mr. De Preter.

MR. DE PRETER: Good morning, Your Honors. May it please the Court, Matthew De Preter on behalf of Grunt Style, and I'm here to discuss Grunt Style's trademark, THIS WE'LL DEFEND. This case does hinge on priority, and we go back to the S.C. Johnson case that states it clearly: Priority of use is the bedrock principle of trademarks. The person that uses it first is the owner. That's exactly how trademarks work. And in this case, Grunt Style used THIS WE'LL DEFEND first to identify its company and its services, selling of T-shirts and an online web store. An online web

store would sell all different kinds of products, including T-shirts. And it consistently and continuously used THIS WE'LL DEFEND for all of those uses. It used it on its T-shirts. It used it on its website. And that's exactly the evidence that was presented to the district court. TWD takes an extremely myopic view of what might constitute trademark use, and it does so in only a single instance throughout its brief, focusing on one particular T-shirt and focusing on an extremely narrow time frame that it arbitrarily selected to be the time frame when it started selling T-shirts and when it filed its trademark registration. That's not even the right time frame. The whole point of trademark priority is who used it first. You can't start a test about who used it first by looking at when the junior user first started using it and then examining what uses happened after that. You have to look at when the senior user started using the mark and when they started using it first. And that's exactly what Grunt Style showed at summary judgment. It showed that, starting in 2011, it was selling T-shirts online through its online retail store using the mark THIS WE'LL DEFEND. And we have examples of that website showing the use of THIS

WE'LL DEFEND in the header and on the tab back in 2011 and forward. It started using it on T-shirts, on its collar tags, on its hang tags, and forward. And once Grunt Style established that it was the priority senior user of the mark, it established that it has use. It owns the mark as to all subsequent comers. And now TWD wants to come in and say, 'Well, we registered the mark later.' Registration of a mark bows to prior use of common-law marks. That's exactly what the Johnny Blastoff and S.C. Johnson cases talk about. The registration is a presumption of ownership, and that's it. It doesn't actually confer trademark rights. The law is very clear that that registration is not actually a conferring of trademark rights. Now, it may give you some bonuses, some benefits, but it doesn't confer the rights. What confers rights is the actual use in commerce, and you have to be the first one to use it. There is no strong presumption that TWD would like to advance. In fact, the law says that once you present evidence that there is a senior user, the presumption evaporates. The law literally says 'evaporates.' It's not, 'Well, we continue to hold this presumption because it's strong. We really need to focus on what all of

the evidence is.' No. When the evidence of senior use is presented, the presumption evaporates. And then it is up to that junior user to try and come in and present evidence of its own ownership. And TWD didn't even do that. Throughout its brief, it relies on the stricken expert report of Mr. Wachspress. And you heard Mr. Quinn talk about how they strongly and vehemently disagree with the way in which Grunt Style used it, and it might be ornamental on a particular shirt. That's all Wachspress's stricken opinion, and the district court was correct to strike that. And that decision to strike his expert report is reviewed for abuse of discretion, and TWD didn't even address that here today. When we go forward and we say, 'Well, what about these other uses and the uses throughout the 50 states?' Grunt Style presented that evidence at the district-court level, and that's exactly what Judge Kocoras found. He found that we used it on our T-shirts, on our website, in other ancillary uses associated with the presentation of our T-shirts and our website online-retail-store services. And that's supported by the case law, particularly the Johnny Blastoff and S.C. Johnson cases, that talk about any use of your trademark can go towards establishing that you

are the senior user. It doesn't have to be specific trademark use on the exact identical product. And what it talks about in the case law is that all manner of uses -- uses on the product, uses associated with the product, advertisements, newspapers, magazines, websites -- all of that is in the pool for establishing that you are the one that appropriated that mark first.

MR. DE PRETER: To briefly touch on, Judge Ripple, your comment about, well, are there other marks out there that are well known? THIS WE'LL DEFEND has been registered. Obviously, it was registered by TWD, and it's been registered by others. There's a beer company that uses THIS WE'LL DEFEND. Now, they sell beer. They don't sell T-shirts, and they don't sell online-retail-store services like Grunt Style does, so that's a different trademark, not really an issue. The Army, the Navy, the Marines all have a suite of trademarks, such as MOLON LABE or SEMPER FI for the Marines. They own those trademarks, and they police them, and they license them. They do not own a trademark for THIS WE'LL DEFEND. It's not among the things that they license. And that's actually in the summary-judgment record. There's license

agreements between Grunt Style and the various branches of the government detailing the phrases and things that the government says, 'We own for our trademarks,' and Grunt Style licenses them. THIS WE'LL DEFEND is not among them. And Grunt Style is the one that first appropriated and used that mark in commerce for its goods and its services.

MR. DE PRETER: I'd like to touch on, because Your Honor raised the prejudgment interest. And not only does the Seventh Circuit's case law control, but I think if you look at the statute, it broadly supports exactly what the district court did. You look at the difference between 1117(a) and (b). In (b), you have to specifically point out that interest might be allowable because what (b) says is you can treble the damages in a punitive manner and then, if you want to, you can add prejudgment interest onto that punitive damage. That's not compensatory at all. The whole point of 1117(a) is we have to compensate fully and fairly this party that was wronged. And here, Grunt Style was the party that was wronged. TWD got years of use, infringing use, out of its trademark, out of the THIS WE'LL DEFEND trademark that was Grunt Style's. The jury determined that

there were damages there, and TWD had been using those profits to benefit itself, and it had the time value of money associated with those profits for years. And so, to fully and fairly compensate the party that was wronged, 1117 says, 'Your judge, district-court judge, if you think that this amount needs to be adjusted to fully and fairly compensate, it's in your discretion to make that adjustment.' And that's exactly what prejudgment interest does. It makes sure that the time value of money that the infringer had the benefit of, they don't get the benefit of that. That's part of the damage that Grunt Style, had it had the time value of money, would have been entitled to throughout that entire period of time.

MR. DE PRETER: I'd like to answer any questions that the panel may have. I think that when you look at what is this case about, it comes down to that: Who was first? And Grunt Style was clearly first. The evidence supports that. TWD tries to make, in its reply -- if you look at the reply briefing, which goes into a long discussion of tacking, which is not at issue here and never had been -- it then transitions into a complaint about all of the other uses that it

acknowledges Grunt Style made of THIS WE'LL DEFEND. And it says, 'Well, don't pay attention to any of those because that was by some prior entity, Grunt Style Georgia.' Well, they didn't even appeal that ruling. That was an issue at summary judgment. Grunt Style came to the Court and said this complaint by TWD that Grunt Style's predecessor in interest, Grunt Style Georgia, that then transitioned into Grunt Style Illinois and is now Grunt Style LLC, a Delaware entity -- that transition happened smoothly and consistently and, just like any other company that moves along the line, all the rights go along with it. And the district court said, 'Yes, that is the law. That's exactly how that's supposed to work, and yes, the rights transfer along with you.' And so when TWD now tries to again resurrect this arbitrary and artificial distinction in admitting that Grunt Style was using its mark on its products throughout that period of time, well, that issue's already been decided and it's not appealed. They waived it. And there are a number of other waiver issues here. The preemption argument is also waived. That was raised at summary judgment. Grunt Style briefed it. We've laid out the reasons why the federal preemption argument that TWD is trying to assert as an

affirmative defense was improper and should be stricken. TWD decided not to address that, and the district court said, 'Well, as you try and raise this on reconsideration, you already waived it. You didn't address the arguments that Grunt Style made.' In any case, it doesn't matter.

THE COURT: Counsel, the question I had was, reading the district court's summary-judgment opinion, the district court found as a matter of law that there's likelihood of confusion here. Typically, you know, in trademark cases, part of the evidence that's presented to the district court with regard to likelihood of confusion are things like consumer-survey evidence and expert evidence with regard to confusion. What sort of evidence was presented here with regard to likelihood of confusion in the district court?

MR. DE PRETER: Sure. We presented all of Grunt Style's uses, and that was all supported by declaration and unimpeached testimony of Mr. Alarik over the course of years. And then we presented uses that were made by TWD. Now, the likelihood of confusion is, of course, a multifactor test. No single factor controls, but some factors can override others, and

even a single factor can be sufficient. Here, the identity of the marks and the same category of goods, sale of T-shirts, online-retail-store web services, all are identical, so overlapping and so overwhelmingly the same that the district court was correct and proper in determining that, yes, there was likelihood of confusion at issue.

THE COURT: Thank you.

MR. DE PRETER: Thank you.

THE COURT: Mr. Quinn, in light of our colloquy, we'll give you two minutes for rebuttal.

MR. QUINN: The interesting issue is the level of evidence that has to be shown to show priority. If you had common-law mark versus common-law mark, and you're at trial, I'd agree it's preponderance. What if it's common-law mark versus registered mark that enjoys a presumption of validity? It seems like the level of evidence needs to be somewhat higher. I want to respond to Grunt Style's argument: 'Oh, we've used it first and we've used it continuously.' Grunt Style is the one that cited the Supreme Court case on tacking. So the way tacking works

with priority is it needs to be the same mark, and that's what we discussed in the reply brief. If there's differences in the mark, it doesn't tack. And if you look at the supplemental appendix, it shows the different T-shirts. All of those T-shirts are different, and it stopped. It's not continuous. They need to show active use. They need to show it keep going with the same mark. They just can't show that with the words THIS WE'LL DEFEND on its own. All they can show is THIS WE'LL DEFEND either in connection with an ornamental design on a T-shirt or in connection with a registered composite mark. That doesn't work. You can't sever that. You have to look at it as a whole. Here to answer any questions.

THE COURT: Thank you very much.

MR. QUINN: Thank you.

THE COURT: The case will be taken under advisement.