**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Grunt Style LLC,<br>Plaintiff,<br><br>v.<br><br>TWD, LLC,<br><br>Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 1:18-cv-07695<br><br>District Judge: Hon. LaShonda A. Hunt |

# PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR CIVIL CONTEMPT, ORDER TO SHOW CAUSE, SANCTIONS, AND ATTORNEYS' FEES UNDER 15 U.S.C. § 1117(a), 28 U.S.C. § 1927, AND THE COURT'S INHERENT AUTHORITY

## I. Introduction

On October 22, 2026, this Court found that Defendant, TWD, LLC ("TWD") had not complied with the permanent injunction, rejected its latest effort to modify or stay that injunction, and ordered compliance within seven days. The Court expressly admonished TWD and its counsel to "stop playing games," found that TWD's owner, Tim Bauer's ("Bauer") prior submission was "not a declaration," and warned that contempt would follow continued noncompliance. The Court nevertheless afforded TWD one final opportunity to provide a complete, factual accounting and comply with the Court's permanent injunction order.

TWD, Bauer, and TWD's counsel Darren Quinn ("Quinn") responded by continuing the same gamesmanship the Court had just condemned and that has plagued this case for the near decade it has been on-going. Contrary to TWD's recent assertions that "as a result of removing all the content" the Instagram handle became "available" (see Ex. A, Oct. 22, 2026 Tr. 13:7-15) Bauer's revised declaration (Dkt. 423) (hereafter the "Revised Declaration") admits for the first time that he intentionally deleted the entire Instagram account, not merely its content, while concealing that he did so.

TWD and Bauer then pursued an emergency appeal based on positions inconsistent with those they now advance. The Seventh Circuit denied a stay. But rather than relent and comply with this Court's directives, TWD contrived to avoid compliance through further trickery. It did not provide proper assignments. Instead, it crafted convoluted documents stuffed with extraneous information, arguments, and reservations. It further drafted the assignments to "Grunt Style LLC, an Illinois" LLC despite knowing that Grunt Style is a Delaware LLC. See Dkt. 423-2. That is significant. TWD spent eight years arguing that there was no continuity between Grunt Style's successive corporate forms as an excuse to try and avoid liability. The purported assignments are clearly calculated to preserve a dispute rather than effectuate the transfers ordered by this Court.

This is not substantial compliance. It is a deliberate pattern of evasion, half-disclosure, and obstruction. It has forced Grunt Style to return repeatedly to this Court merely to obtain the relief already awarded and affirmed on appeal. TWD, Bauer, and Quinn should be held in contempt, and Quinn should be sanctioned for unreasonably and vexatiously multiplying these proceedings. Based on the totality of the circumstances of this case, which are now sharpened by TWD's post-judgment conduct, the Court should find that the unreasonable manner in which TWD and Quinn have litigated the case makes this an exceptional case under the Lanham Act.

## II. Bauer's Declarations Were Intentionally Misleading

### *A. Bauer Concealed The Details Regarding the Instagram Account*

Bauer's evolving account of the "@thiswelldefend" Instagram handle demonstrates deliberate concealment, not confusion. In his original sworn compliance declaration dated February 27, 2025, Bauer stated only that he had "removed all content and THIS WE'LL DEFEND products" from TWD's Instagram account. Dkt. 341 ¶ 6(f). He did not disclose that on the very same day he signed that declaration, he deleted the account itself to initiate a process that would relinquish the handle and that those actions placed the handle beyond TWD's control. When Grunt Style later sought compliance, Bauer again avoided those critical facts. His supplemental declaration asserted that, "[a]pparently, as a result of removing all content," the handle became available and was acquired by someone supposedly "related to" Grunt Style. Dkt. 407-1 ¶ 37(b). Bauer's declaration (which Mr. Quinn clearly assisted in drafting as it reads like a legal brief) was deliberately couched in passive and speculative language: the handle "apparently" became available, "apparently" passed to someone else, and was "apparently" controlled by someone associated with Grunt Style. What *Bauer did* was conspicuously absent.

The Court rejected that evasive account. It explained that allowing the handle to become available was "the equivalent of taking these T-shirts with someone else's trademark on it and

dumping them out on the street" and emphasized that disposition of the account "was not for Mr. Bauer to determine." Ex. A, Oct. 22, 2026 Tr. at 15:1–10. The Court then directed Bauer to provide the specific facts within his knowledge: "when he took these steps, what he did, [and] who he contacted." *Id.* at 15:11–22. More broadly, the Court held that Bauer's prior submission was "not a declaration," ordered him to provide "all of the factual information" required, and instructed Quinn: "Stop playing games." *Id.* at 20:8–25.

Bauer's Revised Declaration confirms why Grunt Style's and the Court's concerns were well founded. The original declaration was false. Nothing happened "as a result of removing all content." In fact, aside from using Grunt Style's mark, Bauer never had content to begin with. See Dkt. 304-3 (showing "0 posts"). Bauer now admits that he did not merely remove content; he confirms: "I deleted the profile on the TWD Instagram account." Dkt. 423 ¶ 29(a). That admission exposes the material omission in his earlier declarations and the falsity of the representations. The handle did not mysteriously become available merely because its content was removed; Bauer affirmatively deleted the account and thereby initiated the process by which TWD divested itself of the handle. Moreover, Bauer's Revised Declaration quotes Instagram's policy explaining that a deletion request is not necessarily immediate or irrevocable, a user may cancel the deletion for a period of time before the profile and its information are permanently deleted. *Id.* ¶ 29(c).

Thus, the distinction between "removing content" and deleting the account is substantive: one disables infringing material while preserving an asset for transfer; the other relinquishes the asset so a third party may claim it. Dkt. 341 concealed what Bauer had done, and Dkt. 407-1 substituted speculation for facts. Then, after the Court directed Quinn to obtain a proper factual declaration, Quinn and Bauer prepared and filed Dkt. 423, which finally admitted deletion. This progression demonstrates coordinated material omission and evasion, not a reasonable and diligent

effort to comply. It is further evidence of Bauer and Quinn's gamesmanship in drafting the original Declaration and the harm it caused. Had they been truthful in stating Bauer deleted the account on February 27, 2025, Grunt Style could have immediately taken action to ensure that the deletion was reversed and the asset saved. But instead they hid the truth and the handle is unrecoverable.

The Seventh Circuit rejected materially similar gamesmanship in *Pable v. Chicago Transit Authority*, holding that counsel's artificially literal defense of a misleading statement "misses the point" where counsel failed to correct the resulting misunderstanding. 145 F.4th 712, 726 (7th Cir. 2025). Likewise, the fact that deleting the account technically "removed" its content does not cure Bauer's concealment of the materially different, and consequential, fact that he was responsible for deleting the account and it did not "apparently" "become available."

*B. The Revised Declaration Disobeyed The October 22 Directive*

Bauer's declaration again attempts to parse out persons responsible for compliance. In paragraph 5 he states that there are no other persons "that I understand" to be officers, agents, servants, … or entities acting on the behalf or in concert with TWD. Separate and apart from Darren Quinn acting in active participation with TWD in this litigation, TWD and the Law Offices of Darren Quinn have been working in active concert together for years. This is evident from TWD's website, which listed them as its legal contact in the "About Us" section. See Dkt. 366-2, Exhibit B. Thus, the Declaration omits one of the primary entities assisting TWD throughout its infringement, and by hyper focusing on stating "I individually have complied" throughout the declaration, Bauer skates around whether TWD and its officer, agents, etc. have complied.

The Declaration is also suspect in its continual use of quotes when asserting compliance. For example, in Paragraph 20, Bauer refers to "labels" and "signs" "advertising" "stationary" and "surrender and deliver," all in quotation marks. The use of the quotations strongly indicates that

TWD is ascribing some hidden meaning to these generally understood terms. Bauer also states that he and TWD never owned any labels, signs, advertising or promotional material. Dkt. 423, ¶21. However, that is obviously false and renders the entire declaration suspicious and confusing. The trial included numerous examples of evidence of TWD ownership of labels and advertising. See Dkt. 295-6, 299-1, 303-4, 303-5, 304-1, 304-2, 304-5, among others. TWD even advertised it products as being "Tagless/Inside Neck Label" with the following label appearance:




. Dkt. 304-5. Thus, Bauer's assertion that "TWD and I never owned" any labels or advertising makes the follow on assertion that they "did not give any such items to third parties" dubious at best. What happened to all of the advertising files used to promote TWD's infringing products? The Declaration is silent. Similarly, Bauers assertion that his original declaration constitutes compliance with Paragraph 7 makes little sense. See Dkt. 423, ¶ 23. The original declaration never even mentioned paragraph 7. See Dkt. 341.

*Ohr v. Latino Express, Inc.*, 776 F.3d 469, 474 (7th Cir. 2015) is particularly instructive. There, the defendant took facial steps toward compliance but structured them to avoid accomplishing what the court had ordered. The Seventh Circuit affirmed contempt because those efforts were "illusory," designed to "skirt the command of the court's order," and therefore neither substantial compliance nor a reasonable and diligent effort to comply. *Id.* at 477. The court described the attempted evasion as "elaborately crafty." *Id.* Here, Bauer's Revised Declaration follows the same pattern: it creates the appearance of compliance by admitting deletion while withholding the very facts the Court ordered him to disclose and using quotes to sew confusion. The Court's command was unambiguous, the violation is significant, and the absence of reasonable and diligent compliance is established by clear and convincing evidence. *Id.* at 474, 477.

## III. TWD's Emergency Motion Confirms Its Actual Notice and Understanding of the Court's Directives

TWD's Emergency Motion eliminates any credible claim of confusion. Filed expressly for both TWD and "non-party Tim Bauer," it acknowledged the October 29 deadline and quoted this Court's warning that contempt would follow noncompliance. App. Dkt. 3-1 at 1–2, 7, 25–26. Bauer separately submitted a declaration identifying the obligations imposed upon TWD and himself. App. Dkt. 3-7 ¶¶ 2–5. TWD and Bauer therefore understood that the October 22 ruling imposed immediate obligations upon both of them and that failure to perform those obligations could result in contempt.

The scope of the requested stay is equally significant. TWD and Bauer sought relief from only four obligations: (1) dismissal of the TTAB opposition; (2) transfer of the domain; (3) assignment of the trademark registration; and (4) assignment of the Army agreement. App. Dkt. 3-1 at 3-5. They did not seek a stay of the Court's directives concerning the Instagram handle, the inventory and manufacturing materials, or Bauer's obligation to provide a complete factual declaration, even though they attached the hearing transcript containing those directives. Their selective request demonstrates that they understood the separate obligations imposed at the hearing and made a deliberate choice concerning which ones to challenge.

The Seventh Circuit summarily denied the requested stay on October 28, one day before compliance was due. App. Dkt. 4. Grunt Style does not contend that the summary denial adjudicated the merits of TWD's arguments. Its significance here is straightforward: no stay existed. TWD and Bauer therefore remained obligated to comply with all four challenged provisions, as well as the additional directives they *had not asked* the Seventh Circuit to stay. When Bauer filed the Revised Declaration on October 29, neither the appeal nor the Emergency Motion excused incomplete compliance with any portion of the Court's ruling.

The Emergency Motion also confirms TWD's understanding of what the ordered trademark assignment required. TWD represented to the Seventh Circuit that "an assignment of a registered trademark transfers ownership of the trademark and related goodwill," expressly citing 15 U.S.C. § 1060(a)(1). App. Dkt. 3-1 at 22. Yet after the stay was denied, TWD executed an instrument transferring only "Registration No. 4880766," without conveying the underlying mark or associated goodwill. Dkt. 423-2 at 2. That defect cannot credibly be attributed to misunderstanding: TWD had accurately described the required legal scope and effect of an assignment to the Seventh Circuit only two days earlier. The Emergency Motion is therefore relevant as evidence of knowledge and intent. It establishes that TWD, Bauer, and Quinn knew the deadline, understood the consequences of noncompliance, recognized that Bauer was personally subject to the Court's directives, distinguished among the separate obligations imposed, and understood what an effective trademark assignment would transfer. Their subsequent omissions and defective performance were not products of ambiguity or confusion. They were purposeful.

## IV. TWD's Purported Trademark Assignment Did Not Effectuate the Transfer Ordered by the Court

The Court ordered an effective transfer, not merely delivery of a document bearing the title "Assignment." At the October 22 hearing, the Court ruled unequivocally that "[t]he registration needs to be assigned to Grunt Style." Ex. A, Oct. 22, 2026 Tr. at 9:19-20. The Court granted Grunt Style's motion. In that motion, Grunt Style requested and order requiring "turning over the principal promotional tool, US Trademark Registration No. 4880766 along with any goodwill and agreements associated therewith." Dkt. 402, at 6. Grunt Style attached the letter it sent to TWD with the appropriate assignments as an exhibit. Dkt. 402-1. There is no excuse for TWD concocting its own materially altered, deceptive, confusing and outright wrong alleged assignments, when the Court had granted Grunt Style's motion with the assignments it had attached.

TWD's purported assignment does not accomplish the necessary result. Its operative provision states: "TWD, LLC hereby assigns Registration No. 4880766 to GRUNT STYLE LLC." Dkt. 423-2 at 2. It does not convey TWD's right, title, and interest in the THIS WE'LL DEFEND mark, the business goodwill symbolized by that mark, or any other substantive trademark rights. [1]

This is not merely the absence of talismanic language. The instrument affirmatively defines the subject of the transfer as the registration number alone and provides no basis to conclude that the mark or its associated goodwill accompanied it. Section 1060 permits assignment of a registered mark only "with the good will of the business in which the mark is used" or the portion of the goodwill connected with and symbolized by the mark. 15 U.S.C. § 1060(a)(1). Consistent with that requirement, the Seventh Circuit holds that "[t]he transfer of a trademark apart from the good will of the business which it represents is an invalid 'naked' or 'in gross' assignment," which passes no trademark rights to the assignee. *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 956 (7th Cir. 1992). Because TWD's instrument purports to transfer only the registration and neither transfers nor identifies the associated goodwill, it does not establish the legally effective transfer the Court ordered. TWD cannot attribute that defect to confusion in view of its unambiguous arguments the Seventh Circuit regarding assignments. App. Dkt. 3-1 at 22.

The purported assignment also eliminates the reference to the acknowledgement of the sufficiency of consideration. This is not a mere oversight. It was an intentional and purposeful sabotage that undercuts the viability of the assignment. It is contract law 101 that a contract lacking consideration is void. See *Memorylink Corp. v. Motorola Sols., Inc., Motorola Mobility, Inc.*, 773 F.3d 1266, 1270 (Fed. Cir. 2014) ("Consideration is a basic requirement of a contract"). Express

---

[1] Whether TWD was ever able to legally generate any rights or good will through its infringing use of Grunt Style's mark is irrelevant. The critical point is that, to the extent it generated any, it is not allowed to keep such ill-gotten fruits; it must be turned over to the rightful owner of the mark, Grunt Style.

acknowledgement is key as courts do not inquire into the sufficiency of consideration; even the agreement to assign itself may be adequate. *Id.* at 1270-1271.

TWD's "assignment" also incorrectly identifies Grunt Style as an Illinois limited liability company, when Grunt Style is now a Delaware limited liability company and Quinn has long known its correct state of organization. Indeed, TWD did not dispute this fact during summary judgment briefing. Dkt. 176-1 at ¶3. Although the misidentification may seem innocuous, it is not, and it cannot be viewed in isolation. TWD dragged this case on for years, continually advancing the same misguided distinction of the corporate form of Grunt Style, incessantly arguing that the different states of organization somehow deprived Grunt Style of the benefits of its predecessors' actions. While this was dispensed with on summary judgment, see Dkt. 188 at 11-13, TWD still tried to insert the corporate distinction at trial (which this Court rejected). See Dkt. 253 at 17 ("TWD states that it is entitled to elicit facts regarding Grunt Style Georgia and Grunt Style Illinois during the time period before May 27, 2015. (Dkt. 249 at 8-9). Not so."). Consequently, the misidentification can only be concluded to be an intentional attempt to undermine the viability of the assignment, cloud its effect, and vexatiously force Grunt Style to try and unwind and explain away the discrepancy with further corrective papers, all of which would subject the propriety of the assignment to attack in the future. Collectively, with TWD's omission of the mark and associated goodwill, its disregard of the corrective forms provided by Grunt Style, its exclusion of consideration, and its insistence that a facially deficient instrument constituted compliance, the improper "assignment" further demonstrates TWD's continuing pattern of obstruction, delay, and obfuscation rather than a reasonable and diligent effort to comply with the Court's directive.

Prior to filing this motion, Grunt Style provided proposed forms containing the operative language necessary to accomplish the ordered transfers. Dkt. 402-1. TWD neither executed those

forms nor proposed targeted revisions that would preserve an effective conveyance. Instead, Quinn concocted the improper assignment documents and declared TWD's compliance. Grunt Style immediately contacted Quinn, provided its objection and copies of the proper assignments, and requested signed copies within three days warning that Court intervention would be the result of any failure by TWD. Exhibit B. Quinn ignored the deadline. After it passed, Quinn responded by rejecting Grunt Style entirely and insisting that TWD had in fact complied because its own documents were "signed, notarized, and delivered by email." Exhibit C. That position mistakes the requested method of performance for the substantive obligation. A signed and notarized document that does not effectuate the ordered transfer is not compliance. It is just further gamesmanship.

Put simply, Quinn's objections to the proposed consideration and recital language do not justify the defects in TWD's instrument. If he believed those provisions were unnecessary or inaccurate, he could have removed them while retaining operative language transferring the mark, the registration, and the associated goodwill. Instead, he elected to stand on an instrument that omits precisely what TWD had just told the Seventh Circuit a trademark assignment transfers. TWD's response confirms "formalistic" compliance designed to preserve another dispute rather than accomplish the transfer the Court ordered. TWD cannot rely on an artificially literal distinction between delivering an "assignment" and effectuating the assignment required by the Court. *See Pable.*, 145 F.4th at 726.

## V. The Conduct Warrants Three Distinct Forms of Relief

TWD, Bauer, and Quinn engaged in the same obstructive course of conduct, but that conduct supports three distinct forms of relief directed to different actors and serving different purposes: (1) civil-contempt remedies to compel and compensate for noncompliance; (2) sanctions

against Quinn for unreasonably and vexatiously multiplying the district court proceedings; and (3) an exceptional case fee award (§1117(a)) against TWD based on the totality of the litigation.

**A. *TWD, Bauer and Quinn Should Be Held in Civil Contempt***

Civil contempt is appropriate where an order imposes an unambiguous command, the alleged contemnor significantly violates that command, and the alleged contemnor fails to take reasonable and diligent steps to comply. *Ohr*, 776 F.3d at 474. Each requirement is satisfied here.

The October 22 ruling imposed specific obligations due October 29. TWD and Bauer had actual notice, obtained no stay, and nevertheless failed to provide the ordered factual accounting or effective transfers. These were significant violations of the central acts the Court directed them to perform. The non-compliance was clearly an intentional and orchestrated course of action undertaken by TWD, Bauer and Quinn, to frustrate Grunt Style's attempts to end this litigation.

Bauer is subject to contempt notwithstanding his status as a "nonparty." The Permanent Injunction expressly applies to TWD's officers, agents, and persons acting on its behalf or in active concert with it. Dkt. 321 ¶ 1; *see also* Fed. R. Civ. P. 65(d)(2). Bauer is TWD's sole manager, had actual notice of the injunction and the October 22 ruling, personally controlled the actions necessary for compliance, and submitted the declarations purporting to establish that compliance. An individual responsible for a corporation's compliance may be held in contempt when he fails to take appropriate action to secure it. *Tranzact Techs., Inc. v. 1Source Worldsite*, 406 F.3d 851, 856 (7th Cir. 2005). The Law Offices of Darren Quinn, and Darren Quinn himself, are further subject to the injunction as the agents and entities acting in active participation with TWD.

The Court should find contempt order effective corrective assignments in the form provided in Exhibit B within 24 hours, and order payment of attorneys fees associated with uncovering the truth of the destruction of the Instagram handle and for compelling assignments

and a clear declaration. The Court should require clarification of the declaration including and explanation of the excessive use of quotes and representations of none ownership of materials TWD clearly owned. If TWD again fails or refuses, the Court should direct completion of the assignments at TWD's expense under Fed. R. Civ. P. 70(a), impose daily coercive sanctions subject to clear purge conditions, and award Grunt Style fees and actual losses for enforcement.

**B. *Quinn Should Be Sanctioned Under 28 U.S.C. § 1927***

Section 1927 requires an attorney who "multiplies the proceedings in any case unreasonably and vexatiously" to personally satisfy the excess costs, expenses, and attorneys' fees incurred because of that conduct. 28 U.S.C. § 1927. The statute requires subjective or objective bad faith. Objective bad faith exists when counsel pursues a course that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound. *Pable*, 145 F.4th at 725-26. Recoverable fees are limited to those that would not have been incurred but for counsel's misconduct. *Id.* at 725.

Quinn's conduct meets that standard. The Court rejected Dkt. 407-1 as argument and speculation rather than a factual declaration, identified the missing information, and directed Quinn to tell his client: "Stop playing games." Ex. A, Oct. 22, 2026 Tr. at 20:8-25. Yet Quinn filed the Revised Declaration despite its continued omissions, submitted ineffective assignments, and insisted that they constituted compliance because they were "signed, notarized, and delivered." When Grunt Style supplied corrective forms (for the third time), Quinn rejected them without proposing language that would accomplish effective transfers, necessitating this proceeding.

That course closely parallels *Pable*. There, counsel made a misleading representation, failed to correct the resulting misunderstanding, and defended his conduct through an artificially literal characterization while opposing the corrective proceedings his conduct had made necessary.

The Seventh Circuit held that such a semantic defense "misses the point" and affirmed sanctions under § 1927. *Id.* at 726. The same is true here. Quinn cannot avoid responsibility by arguing that deleting the Instagram account technically "removed" its content or that delivering documents titled "Assignment" technically satisfied a directive to assign the assets. Those characterizations evade the substance of what occurred and what the Court ordered.

Grunt Style does not ask this Court to sanction Quinn for filing the Emergency Motion in the Seventh Circuit. That court controls sanctions for conduct before it. But the substance of the Emergency Motion is relevant here because it establishes Quinn's knowledge of the deadline, the absence of any stay, and the legal effect of a trademark assignment. The conduct sanctionable under § 1927 is Quinn's subsequent presentation and continued advocacy of deficient submissions in this Court and his insistence upon positions that forced another round of contempt proceedings.

The present § 1927 request is directed to the excess fees and expenses caused by Quinn's post October 22 conduct. Had Quinn complied with the Court's directives, corrected Bauer's misleading account, and effectuated the required transfers, this renewed proceeding would have been unnecessary. Those resulting fees satisfy § 1927's but-for causation requirement and should be assessed against Quinn personally and ordered paid by a date certain. This is a separate basis for awarding fees, and imposition of separate liability, not a duplication of fees awarded under any other basis.

### C. *The Totality of the Circumstances Makes This an Exceptional Case Under 15 U.S.C. § 1117(a)*

The Lanham Act permits an award of reasonable attorneys' fees to the prevailing party in an "exceptional" case. 15 U.S.C. § 1117(a). A case is exceptional when it stands out from others based on the substantive weakness of a party's position or the unreasonable manner in which the case was litigated. Courts apply that standard through a case-specific assessment of the totality of

the circumstances, considering such factors as frivolousness, motivation, objective unreasonableness, and the need for compensation and deterrence. *LHO Chi. River, L.L.C. v. Perillo*, 942 F.3d 384, 386–87 (7th Cir. 2019).

Grunt Style previously moved for fees, which this Cour denied. See Dkt. 386. However, that motion was filed immediately post judgment, and the totality of the circumstances in this case have substantially changed since that time, casting TWD's ligation conduct in a whole new light. The decision to award fees under § 1117(a) is within the district court's sound discretion. *TE-TA-MA Truth Found.-Fam. of URI, Inc. v. World Church of the Creator*, 392 F.3d 248, 257 (7th Cir. 2004).

This case stands out in both duration and manner. Grunt Style prevailed on the substantive claims, defeated TWD's defenses and counterclaims, obtained permanent injunctive relief, and successfully defended the judgment on appeal. TWD nevertheless continued to relitigate the injunction, advanced an inapplicable SLAPP theory (Dkt. 407), and resisted compliance after mandate. Bauer deleted an asset that should have been transferred, concealed that fact through materially incomplete and misleading declarations, substituted conclusions for an inventory accounting, made confusing and demonstrably false representations, and withheld facts even after the Court ordered them to be disclosed.

TWD likewise tendered ineffective assignments and refused to correct them. This sustained course of obstruction, not merely TWD's loss, demonstrates an unreasonable manner of litigation and a need for compensation and deterrence of such behavior in the future.

The Seventh Circuit's decision in *4SEMO.com Inc. v. Southern Illinois Storm Shelters, Inc.*, 939 F.3d 905 (7th Cir. 2019), confirms the appropriateness of fees under these circumstances. There, the district court found that the infringers had acted willfully, maliciously, and in bad faith,

refused to cease their conduct, and caused the prevailing party unnecessary trouble and expense. The Seventh Circuit held that the denial of Lanham Act fees could not be reconciled with those findings and remanded for a reasonable fee award. *Id.* at 913-14. Here, TWD's continued resistance to enforcement, after judgment, affirmance, mandate, and an express warning from this Court, likewise takes the case well beyond an ordinary trademark dispute.

Accordingly, Grunt Style requests an award of its reasonable attorneys' fees under § 1117(a), including the fees incurred enforcing the Permanent Injunction after mandate. Grunt Style further requests the broader action-wide fee award warranted by the totality of TWD's conduct throughout this litigation.

## VII. Conclusion

TWD and Bauer were given a clear directive, a firm deadline, and one final opportunity to demonstrate compliance; Quinn was instructed to tell his client to "stop playing games" and this Court recognized TWD's conduct as "vexatious." Yet they responded with another incomplete declaration, a belated admission that Bauer deleted an asset subject to transfer, no meaningful accounting for the infringing materials, and purported assignments that perpetuated the dispute. After eight years of litigation an affirmed judgment, and successive enforcement proceedings, this conduct cannot be attributed to confusion or oversight. It reflects a continual pattern of obstruction, delay, obfuscation and the advancement of exceptionally weak litigation positions that have multiplied these proceedings and deprived Grunt Style of the benefit of its judgment. The Court should hold TWD and Bauer in civil contempt, order immediate and verifiable compliance, impose appropriate coercive and compensatory relief, sanction Quinn for the excess proceedings caused by his conduct, and award Grunt Style its reasonable attorneys' fees and expenses.

Dated: November 5, 2026

Respectfully submitted,

PLAINTIFF GRUNT STYLE LLC
By: /s/ *Matthew De Preter*
Matthew De Preter
Aronberg Goldgehn Davis &
Garmisa 225 West Washington
Street – Suite 2800 Chicago, IL
60606
P: 312-755-3153
cdepreter@agdglaw.com

*Attorneys for Grunt Style LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 5, 2026 a true and correct copy of the foregoing was filed electronically with the Clerk of the Court through the Court's CM/ECF System, which will provide electronic notification of such filing to counsel of record.

/s/ Matthew De Preter

One of the Attorneys for Grunt Style LLC