# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GRUNT STYLE, LLC, an Illinois limited liability company, | ) | Case No. 1:18-cv-07695 |
| Plaintiff, | ) | |
| -vs- | ) | |
| TW, LLC, a California limited liability company, | ) | Chicago, Illinois |
| | ) | October 22, 2026 |
| Defendant. | ) | 10:00 a.m. |

TRANSCRIPT OF TELEPHONIC PROCEEDINGS
BEFORE THE HONORABLE LaSHONDA A. HUNT

APPEARANCES:

For the Plaintiff: ARONBERG GOLDGEHN
BY: MR. MATTHEW L. DE PRETER
225 West Washington Street, Suite 2800
Chicago, Illinois 60606

For the Defendant: LAW OFFICES OF DARREN J. QUINN
BY: MR. DARREN J. QUINN
12702 Via Cortina, Suite 105
Del Mar, California 92014

Court Reporter: CHARLES R. ZANDI, CSR, RPR, FCRR
Official Court Reporter
219 S. Dearborn Street, Room 1426
Chicago, Illinois 60604
Telephone: (312) 435-5387
charles_zandi@ilnd.uscourts.gov

* * * * *

PROCEEDINGS REPORTED BY STENOTYPE
TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTIO

(Proceedings heard via telephone conference call:)

THE CLERK: 18 CV 7695, Grunt Style, LLC, versus TWD, LLC.

MR. QUINN: Good morning, your Honor.

THE COURT: Hold on. I'm sorry. One second. I had to go grab a different stack of material.

All right. Go ahead. Let's start with appearances for the record from the plaintiff.

MR. DE PRETER: Good morning, your Honor. This is Matthew De Preter on behalf of Grunt Style.

THE COURT: Okay. Thank you. And then the defendant?

MR. QUINN: Good morning, your Honor.

THE COURT: Sure.

MR. QUINN: Good morning, your Honor. Darren Quinn for defendant TWD, LLC.

THE COURT: Okay. All right. Perfect. Thank you both.

Mr. Quinn, I thought I'd just save you a trip to Chicago and just do this on the telephone.

So, Mr. Quinn, let me just start by asking you a question because I -- so, the Seventh Circuit has affirmed the decision, which included the permanent injunction. And I know that a cert petition has been filed with respect to the issue of prejudgment interest.

And so in light of the fact that now there's really

no dispute at all about the use of THIS WE'LL DEFEND and the proceedings before the trademark board, what are you objecting to with respect to the permanent -- with the request, I should say, that Grunt Style has made here?

MR. QUINN: Thank you, your Honor. Darren Quinn.

Grunt Style's reply brief sets out some parts that it had in its letter that it attached as an exhibit to its opening papers. So, the first letter -- this is on pages 13 and 14 of Grunt Style's reply brief.

Grunt Style -- TWD objects to Grunt Style's request that -- to arrange the transfer of web domain www.thiswe'lldefend.com to Grunt Style. So, we object to that. The permanent injunction does not expressly state transfer that domain name.

THE COURT: Okay. Let me ask you, where is -- what's going on with the domain? Who's hosting it now?

MR. QUINN: It's not hosted. It's just a domain name. It's owned by Tim Bauer. It's always been owned by non-party Tim Bauer. There's no content on there that's posted by TWD. To the extent there's any content, it's supplied by Go Daddy. That's the domain name registrar. Sometimes it will, you know, say --

THE COURT: So, Mr. Bauer owns it. Why wouldn't he transfer that? He's not entitled to own that domain name. I mean, that's the whole point of this lawsuit. It was about

the online sales.

And I get -- the permanent injunction has to be reasonably specific to tell you what you can or can't do. Why isn't that implicit within the permanent injunction that he is going to transfer that domain name? He's not entitled to own it.

MR. QUINN: Because Grunt Style did not make a claim under the Anticybersquatting Consumer Protection Act, which is 15 USC 1125(d). And the Northern District of Illinois case that was cited by TWD on this point is *Pure Imagination, Inc., versus Pure Imagination Studios, Inc.*

THE COURT: I read your brief.

MR. QUINN: So that's 2000 --

THE COURT: Yes. Let me --

MR. QUINN: So that says the --

THE COURT: Let me say this, Mr. Quinn, to both sides here. I think that at some point, this litigation really does have to end. I understand that there is a final question that has been raised, a legal question about prejudgment interest; but honestly, I mean, I think it is a stretch to argue that Mr. Bauer, after having fought this case for, what are we on, nine years -- eight years at this point, in two courts -- in California, in Illinois, on appeal, now going up to the Supreme Court. I mean, I don't know that you can say with a good -- in good faith that he's entitled to keep the domain -- the website

domain name simply because the plaintiff didn't ask to have that turned over.

I think that you could reasonably read paragraph 6 of the permanent injunction, which the Seventh Circuit affirmed, when it talks about, "No later than 30 days from entry of this order, the defendant has to surrender and deliver to plaintiff everything, all the physical manifestations of any materials using the mark and the like," I think we can read that -- I'm not adding anything to the permanent injunction. I'm simply reading -- it's a reasonable interpretation that Mr. Bauer is not allowed to keep thiswe'lldefend.com.

I mean, that was the whole point of this case. And I just don't think that you can say with a straight face that because Grunt Style didn't file a specific request that says, "Give us that website domain name," that that is not encompassed within the permanent injunction.

I mean, I think these were arguments that you tried to raise before the Seventh Circuit, and the Seventh Circuit didn't really even address them or didn't find them as a valid basis for any reconsideration of the permanent injunction order.

So, I think we're just spinning our wheels, and now we're nitpicking over things that just make no sense whatsoever.

So, I don't think it's -- he has to give up the

website name. He cannot keep it. And I don't -- you know, again, you can treat that as you think that's a new permanent injunction. It's not. It's just me clarifying that that is what my permanent injunction that the Seventh Circuit affirmed included, what it -- what is reasonably necessary to effectuate the permanent injunction and the rights that Grunt Style has under it, and he has to turn that over. I think that's the easiest way to put it.

All right. Are there other --

MR. QUINN: Yes.

THE COURT: Are there other issues --

MR. QUINN: There are, your Honor.

THE COURT: Yep.

MR. QUINN: Yes. Again, looking at Grunt Style's reply brief, which is also in its letter, TW objects to Grunt Style's request that three -- mostly, let's leave this one out because we don't have any of those.

We were -- TW objects to Grunt Style's request that, "4. Deliver via email to cdepreter@agdglaw.com a signed notarized copy of the assignment of registration No. 4880766." And that's the registration for THIS WE'LL DEFEND.

And again, the permanent injunction does not require an assignment of that. Grunt Style's claims requested cancellation, not an assignment. So, when you're looking at --

THE COURT: What's the difference? What's the

difference between cancellation versus an assignment? I don't know. Is there a distinction?

MR. QUINN: There is. When -- when -- a cancellation means that the registration no longer exists. An assignment means you're taking whatever rights, and he's saying including goodwill, means that now Grunt Style owns TWD's registered trademark rights that it had pursuant --

THE COURT: But TWD doesn't have registered trademark rights in THIS WE'LL DEFEND. Wasn't that the point of this case?

MR. QUINN: It was canceled in the summary judgment, but until all the appellate proceedings are continued, the TTAB doesn't take any action until all appellate proceedings have been exhausted.

THE COURT: But they have been. The Seventh Circuit has issued the mandate, and you have not appealed that determination about the cancellation of TWD's mark to the Supreme Court. So, it's done. The mark is canceled. They have no rights to the mark.

MR. QUINN: But an assignment is different than a cancellation, so that's the -- that's the point.

THE COURT: The assignment is --

MR. QUINN: That's also --

THE COURT: The assignment is a part of the -- again, the relief that the Seventh Circuit has granted here.

I mean, Mr. Quinn, I'm going to tell you, you're skating pretty close to the line here with these arguments. I mean, you can't just disregard this Court and the Seventh Circuit's rulings.

I know that there was some argument made about whether the stay of this -- these parts of the permanent injunction is lifted, whether my stay is lifted. Of course, it is. That was a stay pending appeal. Once the Seventh Circuit affirmed the permanent injunction, affirmed the trial -- the jury verdict, affirmed the summary judgment ruling, the permanent injunction was effective again. I didn't have to lift the stay. The stay automatically lifted once the mandate returned.

But if you need me to specifically say that the stay is lifted, I'm saying it now.

I don't think that you -- I think you're completely ignoring what has happened in this court. And you can feel free to do that, but those arguments, they just -- they're not being made in good faith here.

And I denied the prior request to allow attorney's fees. And there's a request here, and I'm going to deny that, too, because I think this case just needs to end. But I don't think you can say with a straight face that you don't have to dismiss any of this.

The proceedings are done here. So, to the extent that there's a registration that, again, TWD was not entitled to

have, that needs to be assigned to Grunt Style. There's no goodwill that TWD could build up. It wasn't TWD's -- they didn't have the right to do it.

So, I just don't think that you can make these arguments in good faith that somehow they're entitled to continue to hold on to something with respect to TWD after -- THIS WE'LL DEFEND, with the mark, after this Court has already ruled. And you've had your chance to be heard, and the Seventh Circuit denied your request for a rehearing, *en banc* rehearing. You've had those opportunities. And if you wanted to raise this before the Supreme Court, you could. You chose not to.

So, that's done, and we need to start treating this case like that piece of it is done. I think that's the point that I'm making here.

So again, I think that with respect to the request that Grunt Style has made here, the TTAB opposition needs to be dismissed with prejudice. The domain name needs to be transferred to Grunt Style. The registration needs to be assigned to Grunt Style.

That belongs to Grunt Style. It does not belong to TWD, and they don't get to continue to reap the goodwill from illegally using Grunt Style's trademark. I mean, those are the rulings of the Court, and those rulings need to be enforced.

And again, I think -- so, there was an assignment of a settlement and consent agreement between TWD and the Army. Again, TWD was illegally using Grunt Style's mark in a contract with the Army. They don't get to continue -- to keep that and continue to benefit from it.

So, all of that, anything belonging to Grunt Style, TWD has to turn that over. That is reasonably encompassed within the permanent injunction.

The only question I have, I think, at this point, is with respect to the log-in credentials for the Instagram handle. I mean, I don't know how Instagram works and whether Grunt Style is still asking to have that, or now that the handle, I guess, has been disabled or whatever you do on Instagram, whether there is a need for any further relief with respect to that handle.

Mr. De Preter?

MR. DE PRETER: Yes, your Honor. So, obviously, Grunt Style did want that handle. It was part of the advertising that was done by TWD. They say that it -- at some point, now, they don't have control over it. So, if they don't have control over it, obviously, they can't turn it over; but I think it's important for the record to have an understanding of: When did they divest themselves of that?

Obviously, it was during this suit, and that was a property that really should belong to Grunt Style. I -- as

much as I would like this case to be over, I have a suspicion that it won't be, and I think that that piece of information is important to have. So, I would ask TWD: When did they get rid of it? When did they divest themselves of that piece of property?

And I think that kind of goes towards the declaration that was filed in this case. There's another declaration of Tim Bauer filed with this briefing that was replete with statements of, "I understand." "My understanding." Well, I think clearly, that understanding is just being funneled down from Mr. Bauer's attorneys to tell him, "This is what you should say because this is the way that I'm interpreting everything."

I don't think that that's a sufficient declaration under the permanent injunction. I think the permanent injunction has to be unequivocal. "I do not own any more THIS WE'LL DEFEND merchandise. I have no more labels, documents, packaging."

When did they get rid of the tools of manufacturing? The shirts that were made are lithograph shirts, so that there's a screen print that you use. It's a template, and you can -- anyone that has that template can just start making these shirts. Those were not turned over. The declaration is unclear as to whether or not TWD still owns those, or when did they get rid of them? What did they do with them?

So, we're concerned about the existence of product in Mr. Bauer's possession, because TWD seems to make this distinction between TWD, the company, needing to do things, and Mr. Bauer as this quote, unquote "third party" that somehow doesn't need to do anything.

And I think that the Court should order, we would respectfully request, that a new declaration that's not couched and makes specific statements to clarify the existence of shirts, if he's got them, turn them over; and then tools of manufacture that were used for the advertising and promotion of the products, if he's got them, turn them over; and the -- what happened to the Instagram handle? Because, you know, he asked for a stay, and then he's starting to divest himself of a piece of property that is rightfully Grunt Style's.

So, I think that those are the issues that we see remaining, you know, separate and aside from what your Honor just ordered with respect to the assignments.

THE COURT: Okay. I will point out that the permanent injunction applies to TWD, as well as its officers, agents, servants, employees, and all persons or entities acting on behalf of or in active concert or participation with the defendant. And so Mr. Bauer can't say, "It's TWD. It's not me." It applies to him as well with respect to the trademark.

And so I think, again, it is important to emphasize that this Court entered the permanent injunction. That was

appealed. The Seventh Circuit affirmed. And so the permanent injunction, it stands as-is.

So then, with that, Mr. Quinn, where's the Instagram handle? Why doesn't the certification include this information about all of these other materials that might be out there that would belong to Grunt Style?

MR. QUINN: The declaration, supplemental declaration of Tim Bauer, which is docket 407-1, in paragraph 37(b), TW explains -- this is Tim Bauer says, "TW no longer has ownership and control over TWD's Instagram account. Apparently, as a result of removing all content from TW's Instagram account, that Instagram handle was available and became property of somebody else apparently related to Grunt Style based on the current post that refers to Grunt Style owning superior common law rights."

So, it wasn't that TWD transferred that Instagram handle. It took all the content out, and then Instagram said, "Okay. Well, this is apparently open." And then you can tell from the post, it certainly appears -- and this is again in his declaration because it's quoted, "somebody related to or friendly to Grunt Style has control over that name." It's not Tim Bauer, and it's not TWD.

THE COURT: Okay. Mr. De Preter, do you know anything about that? Hold on. Let's -- factually, let's just deal with the Instagram account.

Mr. De Preter, do you know anything about Grunt Style --

MR. DE PRETER: No.

THE COURT: -- owning or having control over this Instagram account?

MR. DE PRETER: No, your Honor, we don't. And I've gone to look at that Instagram handle. It does not appear to have that language on it; but it's not Grunt Style's, and we don't know when TWD gave it up, which I also find it strange to say that TWD said that they took everything off of it, and that's when it went away because during trial, we had the exhibit of THIS WE'LL DEFEND, and there was nothing on it at that point, but TWD still owned it. So, I don't know the facts and circumstances of how TWD allowed that asset to go away, allegedly go away.

I mean, it -- again, this is all -- in his declaration, everything is couched as, "Well, apparently," inactive voice of, "It somehow at some point was allowed to go away." When did this stuff happen? When did Tim Bauer take everything off of Instagram allegedly?

THE COURT: Right. I think those are fair --

MR. DE PRETER: TWD is the one taking these actions, and then they're hiding what it's doing and when.

THE COURT: I think those are fair questions to ask here. I don't know why Mr. Bauer would have simply removed

the content and then allowed the -- the Instagram handle to just become available. I mean, that's the equivalent of taking these T-shirts with someone else's trademark on it and dumping them out on the street.

That's not what was supposed to happen. This was all supposed to be turned over to Grunt Style for Grunt Style to determine how to dispose of or what to do with these items or mediums with its trademark. It was not for Mr. Bauer to make that determination.

And so Mr. Bauer needs to be a bit more forthcoming about exactly what happened with this Instagram account and not say, "Apparently, now Grunt Style is in charge of it." He doesn't know that, so he can't make that declaration. But what he can do is tell when he took these steps, what he did, who he contacted, so that Grunt Style can then potentially reach out to whoever that may be and figure out what needs to happen or what can happen here to ensure that this Instagram handle is not used inappropriately.

I think that's only fair. And that's Mr. Bauer's responsibility, and he needs to do that.

MR. QUINN: Thank you, your Honor. I'm not sure --

THE COURT: Go ahead.

MR. QUINN: I'm not sure what he can do on that, but I appreciate that.

THE COURT: Right. I mean I think he has to at

least -- to at least try. Again, this case is never going to end if we continue to, you know, play these games, essentially, of, "Well, you know, I did this, but" -- no. Just do whatever needs to be done to get the mark, whatever use of the mark Mr. Bauer, TWD, anybody under their control or influence still has to get that transferred to Grunt Style.

Again, everybody's had an opportunity to be heard. Everybody's won on some stuff, lost on some other stuff. That's just the way that litigation works. But now the Court's orders really do need to be respected, and they need to be followed without all of this extra briefing and back-and-forth. We don't need that. It's a lot of money being spent and being wasted.

Mr. Bauer is an intelligent man. He was here. I heard him testify. I saw him. He's a smart man. He knows what he needs to do. Whether he agrees with this decision or not, he's had his opportunity in court. He has to comply.

He is TWD. He has to comply. And I don't think I can say that any other way. And if he doesn't, then what's going to happen is we're going to be sitting here with him before me in contempt proceedings, and counsel is going to start requesting attorney's fees, which I will seriously consider at that point because this is just vexatious at this point.

So, I'm giving everybody fair warning. I think enough really is enough, and we need to figure out how to close this

out, do whatever you have to do according to the orders that have been entered by these courts, and just move things along.

Okay. So, that's the Instagram handle. Was there anything else outstanding in the list of items that Grunt Style was requesting here?

MR. DE PRETER: I think, again, your Honor, Matthew De Preter. Other than just kind of as a -- we didn't find it credible to hear about the T-shirts and the manufacturing capabilities, products. Those were not mentioned in the declaration. He said he had no inventory, but that did not address whether or not Mr. Bauer's personally maintaining these products, not for sale, but for even his own use. If he's walking around on the street with these T-shirts on, again, that's continued use and display of the trademark, in contravention of Grunt Style's rights.

So, we would request that the -- complying with the permanent injunction, which includes the declaration saying you turned over everything, along with the explanation of what happened with the Instagram handle, the turning over of the trademark and the website domain, as we already discussed.

And we would request that the Court provide a time period for this to occur so that it doesn't languish.

THE COURT: Right. The order itself says in paragraph 7 within 30 days of entry of the order that the defendant has to submit to the Court a written report under

oath detailing their efforts to comply and certifying their compliance with this order.

So, I think that would be appropriate, to have it submitted to the Court with more detail here. I don't -- I'm not going to say how much detail needs to be included here because again, at some point, we simply cannot keep fighting about this.

There are court orders in place. If Mr. Bauer is violating the permanent injunction, then, you know, there is relief that can be sought here.

But I think that some more detail is appropriate, not couched in this language of, "Well, you know" -- in language that doesn't really comply with what the Court has ordered here.

It doesn't have to be a novel, but there needs to be enough detail here to say, "I have done everything that this Court has ordered me to do," and certifying to that fact under oath so that the Court then has something to rely upon if it turns out that that is not true and the plaintiff has an opportunity to be able to say, "Yes, we think, you know, you've now -- you've complied. You've done what you're supposed to do."

But I think that some more detail is definitely needed. The certifications are very, very generic, and there needs to be more detail included in it.

MR. QUINN: This is Darren Quinn. This is what I would request -- this is Darren Quinn. This is what I would request. Tim Bauer had submitted the secondary -- supplemental compliance declaration, which is docket 407-1, that's very detailed, 28 pages. We felt it was detailed.

My request would be if there's some portion of that, you know, that can be highlighted by paragraph or identified by the Court or by Grunt Style to say, "This detail is not sufficient. I want to know X," that would be useful because I have 28 pages of detail that's already there.

So, if there's more detail that the Court's ordering, we'll do it. But right now, it's a little unclear -- not just a little unclear, it's unclear what additional is being requested in light of what's already been said. So, if it's something very specific --

THE COURT: Well first of all --

MR. QUINN: We addressed the inventory. We addressed lithographs. We addressed all of that. If there's something more specific, they can say, "Look at this paragraph X. We want to know, you know, 1, 2, and 3."

THE COURT: So first of all, Mr. Quinn --

MR. QUINN: That would be useful.

THE COURT: -- the supplemental declaration reads like part declaration, part your legal argument about what you should -- what he should or shouldn't have to do. That's not

a declaration. That's not -- Mr. Bauer doesn't get a say in what he should or shouldn't have to do. I've already ordered him, and the Seventh Circuit has affirmed that.

And so the supplemental declaration, the starting point is for your client to actually submit a declaration. Just because it's 28 pages doesn't mean that it complies. It's 28 pages with a whole lot of argument and, you know, what he should or shouldn't have to do. Well, I've now told him what he will do and what he was previously ordered to do, and I'm telling him again.

So, you need to go back to the drawing board with him and just include a declaration that has all of the factual information that he's been ordered to provide.

So, it doesn't start with Grunt Style. It starts with your client. Stop playing games. That's the message that you need to communicate to your client. This is not a declaration from an individual. This is a legal brief. These are all the arguments that you've been raising about why, you know, he's -- whether you've complied with -- now you know. You have not complied. He has not complied. Therefore, he can now go back, in light of my ruling today, and respond accordingly with a factual declaration.

Whatever his legal arguments are, I've heard them. I have rejected them. And I am granting Grunt Style's motion here to compel compliance with the permanent injunction.

I will hold him in contempt if he continues to do this. So perhaps what -- that's the starting point. He has 14 days to get this fixed and get it done. Get a declaration submitted.

I will not hold TWD in contempt at this point because I -- you know, I will give everyone the benefit of the doubt that they're -- it's been a little unsettled. At the time that this was filed, it was premature because the mandate had not issued.

The mandate has issued. The court proceedings are done with respect to the mark. So, whether you agree with that or not, they're done.

So, Mr. Bauer and TWD needs to comply. Is that clear? Is that enough direction for him?

MR. QUINN: That's -- thank you, your Honor. That helps. Thank you so much. Um --

THE COURT: Okay.

MR. QUINN: I do have one other -- if we're getting ready to end on the permanent injunction issue and move to costs, I do have one other comment or request on this, if I may.

THE COURT: Sure.

MR. QUINN: So, what is likely going to happen is I know you say things must end, but TWD is likely going to file an appeal with respect to, you know, modification, termination

of the injunction on some or all of the points that have been raised in -- on this today.

And so Federal Rule 8 -- Federal Rule of Appellate Procedure 8 requires initial motion be made in the district court, which we've done. And the stay has been granted on that, as I understand it. So now for the Court of Appeals, I have to --

THE COURT: I'm sorry. What stay? What stay has been granted?

MR. QUINN: Has been denied. I've requested that the Court stay the permanent injunction, particularly on the contempt portions, until exhaustion of appellate proceedings.

THE COURT: But why? What difference does it make? Wait, wait, wait, wait, wait.

So, I did not -- I'm not quite sure, what do you mean exhaustion of appellate proceedings? The appellate proceedings are exhausted.

MR. QUINN: TWD -- in light of the rulings that I've heard today, TWD, I anticipate, will file a second Seventh Circuit appeal with respect to its request that the injunction be, you know, modified or terminated with respect to certain provisions. And so --

THE COURT: Okay. And that's absolutely your right to do that.

MR. QUINN: Right.

THE COURT: I'm not going to stay anything. I don't think that I have modified the injunction. I think I've just clarified what is required.

But again, you're entitled to file whatever you want to file.

MR. QUINN: Okay. And so all I'm requesting is that it may make sense, in light of TWD planning to file a second Seventh Circuit appeal and then TWD will need to file a motion for stay with the Seventh Circuit if the Court is requiring compliance right away.

And so what it may make sense on this is that the Court say that the date for TWD's compliance is seven days after the Seventh Circuit rules on TWD's motion for stay. I think that would make sense --

THE COURT: Absolutely not. Absolutely not. I will not. In fact, you're going to appeal? That's fine. So then, let's wrap things up before me so that you don't appeal, and the Seventh Circuit -- you're asking the Seventh Circuit to rule on something where it is still ongoing before me. So, Mr. Bauer has seven days now to submit that -- his compliance order so that I have a chance to review it.

It doesn't make sense to have two courts looking at this at the same time. What you need to do is finish everything before me and then take it upstairs. And if the Seventh Circuit sees it differently, fine. I don't take

offense at all. You have the right to appeal. I don't have an issue with that.

But what I don't want is we are now wasting time. So, I've already had to take time to go over an issue that was raised on appeal; and you could have raised all of this on appeal, and you tried to, and the Seventh Circuit said, "Nope. There's nothing for us to consider."

So now it's back before me because you refused to comply. I now compel compliance, and you tell me, "Well, you know, now we're going to go back upstairs."

You can do what you want. In seven days, he needs to file his -- you need to comply with the permanent injunction, and you need to have -- and that means comply with all of the provisions of the permanent injunction, including paragraph 7. That's all I'm giving you at this point.

If he chooses not to do that, then he can potentially be held in contempt, or you take it upstairs. Whatever you're going to do is what you're going to do.

He's got seven days to do that because I'm wrapping this up. This is a 2018 case. I'm not going to continue to go back and forth on what, you know, he thinks he should or shouldn't have to do. Take it upstairs. If they see it differently, they'll tell me that, and I will respond accordingly.

So, no, I am not granting -- I will not stay my order

pending anything. My order is going to be entered today, and that is what it will say. The motion to compel compliance is granted. Holding in contempt, that will occur if you don't comply within seven days.

MR. QUINN: Thank you, your Honor.

THE COURT: And then you can do whatever you need to do before the Seventh Circuit. All right?

MR. QUINN: Thank you, your Honor.

THE COURT: Okay. Last point is the bill of costs. I actually have a written order on that. The plaintiff is seeking $17,000 in taxable costs. The defendant has raised a number of objections, most of which I don't think are really -- the timeliness and waiver is not a valid objection. The insufficient itemization and documentation, that's partially correct.

And so based on that, which you'll see in my ruling, the only amount that's recoverable here is the $160 for witness fees. But there's no reason for me to go through that ruling right now. I've got the order. I will get that entered on the docket after court.

All right. And so then, I think that will -- the current motion to hold TWD in contempt -- do you want that denied without prejudice at this point, Mr. De Preter, or do you want me to hold off on that to see if compliance results -- or occurs?

MR. DE PRETER: I think denial without prejudice is probably the cleaner way. I will assume that everything will be complied with and that we don't have to have any further proceedings.

THE COURT: Okay. All right. Then I will do that.

And then for all of the reasons that I've stated on the record and for the reasons stated in Grunt Style's motion to compel compliance with the permanent injunction, I will deny TWD's motion to modify, terminate, or stay certain provisions of the permanent injunction.

All right. I'll get those orders entered today so that you have them and we can all move forward.

Is there anything else that I need to address?

MR. DE PRETER: Nothing from plaintiff, your Honor. Thank you.

THE COURT: Okay.

MR. QUINN: Nothing from TWD. Is the court reporter the same reporter that it's been in the past?

THE COURT: Yes, I still have the same court reporter.

MR. QUINN: Okay. Thank you.

And thank you again for alerting me yesterday to allow me to attend telephonically. I was literally at the gate of the airport. That saved me a lot of time. And for reasons that counsel knows, I try to avoid --

THE COURT: Sure.

MR. QUINN: -- avoid things that -- anyway, that's it. Thank you.

THE COURT: Okay. Thank you, everyone. Have a good day.

THE CLERK: Court is adjourned.

(Concluded at 10:44 a.m.)

* * * * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/s/Charles R. Zandi* *October 26, 2026*

Charles R. Zandi
Official Court Reporter